## Gertrude Leahy et al., Appellants, v. Daniel W. Morris, Appellee.

Opinion filed March 4, 1937.

ELY & DERRICK, of St. Louis, Mo., and J. D. WILSON, of Nokomis, for appellants.

FARMER, KLINGEL & BALTZ, of Belleville, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

A short distance south of the government's army field known as Scott Field in St. Clair county, Route No. 161 of the state system of durable hard surfaced roads, an east and west highway, intersects with another road of said system running north and south at that point. Owing to its proximity to Scott Field, this route is known as the Scott Field Road. As Route No. 161 approaches the Scott Field road at the point in question there is a "Y" formed, one branch going to the right, or northwest; the other branch going to the left, or southwest,—both running into the Scott Field Road.

About 4:30 o'clock in the afternoon of November 13, 1934, plaintiff Gertrude Leahy's testate, Jeremiah J. Leahy, Gertrude Leahy his wife, and Helen Scarritt were driving from the east on route 161 in an automobile driven by the said Jeremiah J. Leahy and owned by Helen Scarritt. These are the three plaintiffs. As they approached the Scott Field Road and turned on the left wing of the "Y" to enter said road, Daniel W. Morris, defendant appellee, was traveling on the Scott Field Road in a northerly direction, coming from the south of where the Scarritt car was to enter the Scott Field Road. With Morris were his wife, his eight-year-old son and Leo Seyb, his wife's brother.

Right of way has been given to the Scott Field Road over the south arm of Route No. 161, and the State, to give this notice, has placed the usual stop sign on the west side of this arm about 30 or 60 feet back or north from the point where it runs into Scott Field Road. The State has also placed another sign on the north side of Route No. 161, about 400 feet east of Scott Field Road, which sign reads "Stop Sign Ahead."

Both of these roads at this point are level, as is also the country around for more than a mile, and there is nothing to obstruct the view of a person traveling on either of these roads in any direction.

As the car driven by Jeremiah J. Leahy entered from the south wing of the ''Y'' in question, there was a collision between the car he was driving and the car driven by the defendant Morris. Jeremiah J. Leahy was killed, Gertrude Leahy was injured and Helen Scarritt's car was damaged. Suits were brought for damages to the three plaintiffs growing out of this collision. The jury awarded damages as follows: $5,500 to Gertrude Leahy, executrix of the last will and testament of Jeremiah J. Leahy, deceased; $1,000 for plaintiff Gertrude Leahy, and $300 for plaintiff, Helen Scarritt.

At the close of plaintiffs' evidence a motion was made by defendant to have the court direct a verdict in his favor. This motion was overruled. At the close of all the evidence a similar motion was made and overruled. After verdicts a motion was made for judgment *non obstante veredicto* and this was overruled by the court. Defendant filed a motion for new trial, and while other reasons were assigned, the one relied upon by the defendant was that the verdicts were each against the manifest weight of the evidence. The trial court allowed these motions and set aside and vacated the above verdict.

Appellants filed in this court their petition for leave to appeal from the order of the court granting a new trial in the cause under section 77 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 205; Jones Ill. Stats. Ann. 104.077. Petition was filed in this court during vacation and it was not acted upon immediately. By some error the usual briefs and arguments on appeal were filed in the case, and the case was noted for oral argument before the petition had been passed upon. That fact was called to our attention at the time of the oral argument, and we then decided that arguments might proceed and that we would hear the petition and the cause together. We have so considered this case.

The question before this court, as it was before the trial court, is whether the verdict is against the manifest weight of the evidence, so as to warrant the court in setting aside the verdicts. It is necessary to examine the evidence.

Plaintiff, Gertrude Leahy, testified she is the surviving widow and executrix of the estate of Jeremiah Leahy, deceased; that on November 17, 1934, she and her husband were traveling towards Belleville on highway 161; that they were driving along about 14 or 15 miles an hour; that there was a stop sign where highway 161 turns south to Scott Field Road; that their car made a stop there; that after they pulled away from the stop sign she noticed a rumble and that is all she remembered. When she regained conscious ness she was in the hospital and her husband had been killed. She also testifies to her injuries and to the heirs of the estate. They were driving a 1932 Chevrolet owned by Helen Scarritt who was also riding with them. On cross-examination she testified that as she was approaching the intersection she was looking out of the window on the north side, taking in the scenery; she had been looking out of the window as they were driving along and did not see the collision, nor did she see defendant's machine until the collision. She had been looking out of the window for a distance of 600 or 800 feet. She was talking to her husband. Her husband was a careful driver. She did not see the machine stop, but she felt it. It was daylight at the time, about 4:20 in the afternoon; was a bright, sunshiny day, and countryside around there was perfectly level. There were no obstructions; there was no other traffic on the road except Mr. Willhelm's truck back from the intersection. She did not know of her own knowledge whether her machine hit Morris' car, or Morris' machine hit theirs.

George Willhelm, witness for appellants, testified that he lives in Belleville; is a highway patrolman on

section 24; that on the date in question, about four o'clock he delivered a check for wages to the Beaver boys at their home, which is about 1,200 feet from the intersection of Scott Field, east on 161. While he was there he saw a car pass, later learning it was the car in which plaintiffs were riding. It was going 15 or 20 miles an hour. He left after the car passed and went up the road towards Scott Field in the same direction the other car had gone. He followed the Leahy car and caught up with it. At the point of the accident he was from 200 to 250 feet behind the Leahy car. The Leahy car had crossed the black line of the Scott Field Road at the time of the collision,—all but the rear wheel,—that is, the center line. The witness testified that he saw another car going fast,—he doesn't know how fast, but at least twice as fast as the Leahy car. The Morris car hit the Leahy car just in front of the driver's seat, at the windshield column. The Morris car lifted up about two feet and struck the other, then dropped down and turned around. The Leahy car was forced off the road to the shoulder. The Morris car at the time of hitting this car was partly over the black line on a slant. It was on the west side of the black line of Scott Field Road. The Scott Field Road at that point is 18 feet wide, and at the point of intersection there is additional road which comprises the curve of highway 161, making it four or five feet wider. The Leahy car after the accident was facing directly east, about 15 feet off the edge of the west side of the Scott Field Road. There was dirt that had fallen from the car on the west side of the black line. When he first saw the Morris car before the accident it was coming down the road about 40 feet from the scene of the accident. It was his judgment that the Leahy car was going five or ten miles an hour, coming away from the stop sign. He did not see it stop. After the accident both machines went over to the west side of the road; the Leahy machine was out

in the field some distance, still on its wheels, and the Morris car about a foot off the concrete on the west side.

Clement Beaver testified that he arrived at the scene about five minutes after the accident; saw where the two cars collided. Leahy's car was across the road in a field and the Morris car was on the slab with two wheels on and two wheels off the slab. Witness said he saw dirt from the Morris car below the Morris car, all on the west side of the black line. There was no dirt on the east side of the black line.

Irvin Beaver testified substantially as his brother Clement had testified.

Cyril Beaver testified to substantially the same.

Helen Scarritt, one of the plaintiffs, testified that she owned the Chevrolet involved in the accident.

George E. Smith, a State highway policeman, testified that he arrived at the scene about five o'clock; that there were parts of batteries and glass scattered over the highway there; also along the shoulder of the highway in front of Scott Field Road, which would be on the right hand shoulder on the west side of the black line, which is the center of Scott Field Road.

In the defendant's evidence, Daniel W. Morris, called as a witness in the case of Gertrude Leahy and Helen Scarritt, testified that he is a sergeant of the radio section at Scott Field; that he was involved in the collision in question; was driving a 1934 Chevrolet coach; that his wife was in the front seat with him; that his brother-in-law, Leo Seyb, and his son were sitting in the rear; that he was driving on the east side of the road; was going north; that to the best of his knowledge the accident happened about 65 feet south of the stop sign at the intersection of route 161 and the Scott Field Road; that he was driving about 40 miles an hour; that he collided with the Leahy car, and first noticed it when it was just entering the south

curve of route 161. When he first saw the Leahy car it was about 325 to 350 feet from the intersection, making a curve towards the south. The terrain was level and the day was clear; there were no obstructions to prevent anyone from seeing. He testified that the Leahy car was going from 50 to 55 miles an hour. As he was driving north he saw the Leahy car coming around the curve; he never paid any attention to it, thinking it would stop, or anything like that; just kept on going about 40 miles an hour. As the witness approached the intersection he saw that it would be absolutely impossible for him to stop at the rate of speed he was going; that he was then about 45 or 50 feet from the point of contact; that he was on the right hand side of Scott Field Road, east of the black line; he applied his brakes, which were in good condition, and continued northwardly; that at the time he was 40 feet from the accident the Leahy car was passing the stop sign. The collision took place about 30 feet from where the concrete slabs join and north of the point where the black lines meet; he did not know what part of his car hit the Leahy car until he saw the picture; that he was watching the Leahy car and also watching the road; that he saw the space out to the right of him and knew the road there was 38 or 40 feet wide; at the time he saw the Leahy car was not going to stop it was too late to make the curve; he didn't know whether he slackened the speed of his car or not; thought he could have stopped his car under the conditions with the brakes in good conidtion in about 50 or 60 feet. He saw the Leahy car coming and got ready for the emergency after he was 40 feet from the point of contact. He saw the Leahy car 350 feet before it got to the stop sign and then they were 500 or 600 feet apart; that Leahy's car was headed almost south at the time it came into the Scott Field Road and that both he and Leahy were in Scott Field

Road when the accident happened. He did not think of following the curve around to avoid the accident and had no idea of an accident. He thought Leahy would obey the stop sign. He was under the impression that the Leahy car would stop and obey the stop sign and that was the reason he kept on going.

Mrs. Morris, wife of Daniel Morris, testified that she was sitting on the right of her husband; that her husband was driving north on Scott Field Road on the right hand side of the black line; that he was going 40 miles an hour; that the Leahy car came from the east, and she saw it as it was coming around the curve and estimated its speed at 50 miles an hour; that the Leahy car did not stop at the stop sign, nor did it slow down; there was an impact and she was rendered unconscious; she could feel her husband putting on his brakes; that the Leahy car came into Scott Field Road about 40 or 50 feet in front of the Morris car. She didn't know whether her husband swerved to the right or left; didn't know whether the Leahy car was on the west or east side of the black line, when the collision occurred.

Leo Seyb called for the defendant, testified that he was a brother of Mrs. Morris; that he was riding with them before the collision, sitting in the back seat; when he first saw the Leahy machine it was just beginning to round the curve from the stop sign; that he did not pay much attention to the Leahy car because he knew there was a stop sign. They proceeded further up the road when he noticed the Leahy car was not slowing down; that the Leahy car did not stop, nor did it slow down; that the Morris car was going about 40 miles an hour and the Leahy car was going faster.

Upon the above and foregoing facts the court on ruling on three separate motions held that the plaintiffs and plaintiff Gertrude Leahy's testate were not

guilty of negligence as a matter of law. We think the court rightly so held.

"Negligence does not become a question of law unless the evidence, which may be properly weighed upon the motion to direct a verdict, is such that all reasonable men would agree in their deductions from it, and if from the facts bearing upon the question of negligence reasonable men of fair understanding might draw different conclusions, the question is one of fact, not of law, and must be submitted to the jury. *Chicago & N. W. Ry. Co. v. Hansen,* 166 Ill. 632, 46 N. E. 1071; *Hoehn v. Chicago, P. & St. L. Ry. Co.,* 152 Ill. 223, 38 N. E. 549; *Petro v. Hines,* 299 Ill. 236, at page 240, 132 N. E. 462; 18 A. L. R. 1106." *Hicks v. Swift & Co.,* 285 Ill. App. 1.

This having been left as a question of fact for the jury the court must abide by the jury's findings on that question.

This then leaves the question of defendant's negligence to consider. The facts and circumstances above detailed seem to us to warrant the finding of the jury. There is direct testimony that plaintiff's car was on the west side of the line of route 161 at the time of the collision. There are the circumstances of the mud and glass on the road which indicate that that is true. The position of the cars afterward lends support to that theory. The denials of fact made in this case are made by the people who were riding in defendant's car, all of whom are interested in the outcome, and that testimony differs widely on other material facts. For example, the evidence fairly tends to show that the Leahy car was going from 5 to 15 miles an hour at the time of the collision, while those riding in defendant's car place it as high as 55 miles.

There is no contention in this case except that the verdict was against the manifest weight of the evidence. Our courts have so often laid down the doctrine

that verdicts will not be disturbed by courts unless they are in fact against the manifest weight of the evidence that it seems idle to cite those authorities again here. On this the case was submitted to the jury, properly instructed. The jury found the facts as juries must in all cases submitted to them, even though the line of demarkation between the conclusions which may be drawn from consideration of two sets of facts may be somewhat indefinite.

We are unable to agree with the trial court that this verdict is against the manifest weight of the evidence. It follows, therefore, that we are of the opinion that the trial court was in error in granting a new trial in this case.

The judgment of the circuit court is reversed and the cause remanded with instructions to that court to enter judgments on the verdicts.

*Reversed and remanded with directions.*