Mary Leech, Appellee, v. John C. Newell, Appellant.

Gen. No. 42,700.

Opinion filed June 30, 1944.

RIDER & THUMA, of Chicago, for appellant; CHESTER D. KERN, of Chicago, of counsel.

JULIUS H. SELINGER, of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.
This is a personal injury action with judgment for plaintiff upon a verdict of $7,500. Defendant appeals.
March 31, 1941, about 2:10 p. m. plaintiff, a nurse then 51 years old, was driving south on Union Avenue, Chicago, Illinois, accompanied by another woman, and her car collided with defendant's car being driven east

on 58th Avenue. As a result of the impact, her car struck a third car being driven north on Union Avenue. Plaintiff and her companion were thrown to the pavement and plaintiff was injured.

Defendant claims that plaintiff was guilty of contributory negligence as a matter of law in failing to accord his car the right of way and relies upon *Rupp v. Keebler*, 175 Ill. App. 619; *McCarthy v. Fadin*, 236 Ill. App. 300; and *Riddle v. Mansager*, 254 Ill. App. 68. The first case cited clearly holds that the first car to reach the crossing, in the exercise of ordinary care, should have the right of way and that others should approach with sufficient care to permit the exercise of that right without danger of collision. The *McCarthy case*, decided in 1925, with facts strikingly similar to those before us, would, assuming as true the version of the accident given by plaintiff, cast upon her the obligation of keeping out of defendant's way. The *Riddle case*, decided in 1929, states the rule that one approaching from the right is favored over one approaching from the left unless the former is sufficiently far away, that if driven with due care it will not reach the intersection until the latter can pass. Plaintiff cites on this point the case of *Partridge v. Enterprise Transfer Co.*, 307 Ill. App. 386, decided in 1940 by this court, where it was held that the legislature did not intend that the vehicle on the right should have the right of way regardless of its distance from the intersection and that under a reasonable construction of the Motor Vehicles Law, ch. 95½, sec. 165, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 85.197] the intention was that, where two vehicles at approximately the same time approach an intersection, the vehicle at the right has the right of way. We follow the rule in the latter case. Applying the uniform rule in determining whether there is any evidence of plaintiff's due care, we find in the record testimony that the weather was misty, visibility poor and the pavement wet; that plain-

tiff was driving from 18 to 20 miles an hour in the west lane of the southbound side of Union Avenue and reduced her speed to 4 or 5 miles an hour at the northwest curb where she looked west and observed defendant's car more than a quarter of a block away, going east in the south lane of the eastbound side of 58th Street, about 35 miles an hour; that she accelerated her speed and entered the intersection at about 10 miles an hour and when about the center of the intersection, she looked west and saw defendant's car was right alongside of her; that the collision occurred after she had passed the center of the intersection and that defendant's car, which was going about 35 or 40 miles an hour 20 feet west of the west curb of Union Avenue, struck hers on the right side, proceeded across the intersection and stopped even with the east curb of Union Avenue; that plaintiff's car skidded sidewise to the south and its left rear struck the front of a car northbound in the east lane for northbound traffic on Union Avenue; that its rear was then thrown west and its front east, where it collided with the rear of the northbound car and came to rest. Under these circumstances we find that the question of plaintiff's due care was for the jury.

Defendant contends that the inherent possibility of plaintiff's story, in the light of physical facts, condemns it as unworthy of jury consideration. He says that under plaintiff's story of the accident, if his car was going 35 or 40 miles an hour and struck plaintiff's car, that it would not have been possible for her car to spin south along Union Avenue more than 100 feet to strike the northbound car. We point out as additional factors that the pavement was wet; that according to plaintiff's story, she was driving in the west lane for the southbound traffic and the northbound car was in the eastbound lane. He also points to the condition of the cars following the accident. Photographs of plaintiff's car disclose damage to the right side in the area

involving the rear part of the front fender and the front part of the rear fender. Both front and rear fenders are dented, and the jury from viewing the photographs might well have concluded that the damage appears to be the result of direct force. Defendant's car shows the principal damage to the area involving the left front and center, though the center section of the bumper appears depressed, the grill at the center, and even at the right side, is damaged and there is a deep dent in the center of the hood near its top. This physical evidence leaves the inference that the plaintiff swerved slightly to the left and in that position received the direct impact of defendant's car. It is not consistent with defendant's story that he was stopped at the time of the impact, and clearly supports the testimony that the impact caused plaintiff's car to slide southeast on the wet pavement, so that its left rear struck the front of the northbound car which, in turn, threw the rear of plaintiff's car southwest, causing the left front to turn southeast and crash into the rear of the northbound car. Under these circumstances, we are of the opinion that plaintiff's story is not inherently impossible, and that the case was proper for the jury.

The complaint charged that as a result of the collision plaintiff was thrown to the pavement and suffered, among other injuries, a severe injury to her brain. There was evidence that plaintiff suffered injury and accordingly the question of the extent of the injury proximately caused by defendant's negligence, if found negligent, was for the jury. During the trial plaintiff and several of her witnesses testified with respect to her confinement in the psychopathic hospital pending an insanity inquisition by the County Court following the issuance of a writ therefor upon the sworn affidavit of a police officer. It appears that the police officer's application was filed pursuant to an order of the Municipal Court judge following plaintiff's rearrest after a

hearing upon complaint of a woman whom she had assaulted, believing that the latter was pursuing an affair with Mr. Leech. There was testimony also that a month or so following the accident and about the time she had assaulted the woman, plaintiff had purchased an ice pick with which she had punctured the tires of her husband's car. The testimony of this incident was in addition to the testimony that plaintiff's personality appeared to undergo a distinct change for worse following the accident. There was no objection by defendant to the admission of the testimony respecting the ordering of the application for the inquisition, and her confinement in the psychopathic hospital and of the harmful effects of this experience upon plaintiff. The first objection made to any evidence with respect thereto was made when plaintiff's counsel offered in evidence a certified copy of the proceedings of the inquisition. The court admitted the sworn application of the police officer, the order of the County Court issuing the writ of inquisition, and the finding of the Commission that plaintiff was NOT INSANE. Defendant introduced the Psychopathic Hospital Records of plaintiff's health and behavior from day to day. The testimony regarding her experiences leading to and during her confinement in the psychopathic hospital, and that of the medical experts for both parties with respect thereto, must have emphasized those experiences as a principal element of plaintiff's damage. It is conceded by plaintiff's counsel that she was not insane and there is no claim that she was rendered insane by the accident. It is plaintiff's contention that the injury to her brain caused a traumatic neurosis or psychosis and that the circumstances surrounding the psychopathic proceedings constituted a fact which, with others, tend to prove the contention. Can these proceedings and the confinement of plaintiff in the psychopathic hospital, the inquisition into her insanity, and the harmful

effects she suffered therefrom, be attributed to defendant's negligence? We think the answer is obviously, no. The insanity proceedings were not commenced by defendant and they resulted in a finding that plaintiff was not insane. The commencement of these proceedings was an intervening cause in the succession of events proximately caused by the accident. Defendant cannot be charged with the harm suffered by plaintiff, caused by the error in judgment of a third person. We believe that serious error was committed in the introduction of the record of the proceedings into the insanity of plaintiff and that, under the circumstances, defendant was greatly prejudiced and should have a retrial of the issues, free from the irrelevant and prejudicial testimony and the record referred to.

We have not considered the question of manifest weight or of the excessiveness of the verdict.

For the reasons given the judgment is reversed and the cause is remanded.

*Judgment reversed and cause remanded.*

BURKE, P. J., and LUPE, J., concur.