(No. 35054.—

VIRGINIA PENNINGTON, Admx., Appellant, *vs.* DONALD H. McLEAN, JR., Appellee.

*Opinion filed May 22, 1959.*

HERSHEY, J., dissenting.

CORRIGAN, MACKAY & FITZGERALD, of Wheaton, (WIL-
LIAM E. CORRIGAN, of counsel,) for appellant.

LEREN AND BUREK, of Wheaton, (ALEXANDER J. BU-
REK, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the
court:

Plaintiff, Virginia Pennington, instituted wrongful
death proceedings against defendant, Donald H. McLean,
Jr., for his alleged negligence in causing a collision between
his car and the truck driven by plaintiff's intestate, Ernest
Pennington, which resulted in his death. The circuit court
of DuPage County entered judgment on a jury verdict
awarding plaintiff damages of $22,500, which the Appellate
Court reversed on the ground that plaintiff's intestate was
contributorily negligent as a matter of law. (18 Ill. App. 2d
316.) We have allowed plaintiff's petition for leave to
appeal.

The essential inquiry on this appeal is whether plaintiff's
intestate was contributorily negligent as a matter of law, or
whether there is any evidence that he was in the exercise
of due care at the time of the collision.

In reviewing the record to ascertain whether there is
any such evidence, we shall consider first the physical sur-
roundings, then the facts and circumstances relating to the
collision. The collision occurred at approximately 6 P.M.
on November 9, 1955, on the outskirts of Glen Ellyn, Illi-
nois, at the intersection of Route 64, also known as North
Avenue, and Richmond Street. North Avenue is a 40-foot,
four-lane, preferred highway, running east and west. It
consists of two lanes of pavement for westbound traffic,
and two lanes for eastbound traffic. Richmond Street is
a two-lane blacktop road, which extends north from North
Avenue, but does not fully intersect it, so that if Richmond
Street were extended through the intersection, it would

end in Ki's Restaurant, located on the south side of North Avenue. It must be noted further that about one-third of a mile west of this point where Richmond Street leads into North Avenue is the intersection of Main Street and North Avenue, where there are traffic lights. North Avenue at that point is level, but as it continues east it proceeds upgrade to the crest of a hill which is some 600 feet west of the Richmond Street intersection, and then slopes downward as it runs east past the Richmond Street intersection.

Plaintiff's intestate, driving a Sears Roebuck & Company truck, approached the intersection of North Avenue and Richmond Street from the north, and defendant approached it from the west as he was driving his car downhill on North Avenue, in an easterly direction. It was already dark, the pavement was dry, and the weather was clear. There were only two witnesses to the collision, defendant, and the witness Fitzner, who was also driving on North Avenue in an easterly direction, about 150 feet behind defendant.

The witness Fitzner testified in substance that as he drove over the top of the hill on North Avenue, he first noticed the Sears truck about 150 to 200 yards ahead. It was then across the westbound lanes, close to the center of the highway, headed at a southwest angle, and moving very slowly across the intersection, since the westbound traffic was heavy. He did not see defendant's car until it was almost on top of the truck, which was then crossing into the eastbound lanes. The truck was in the outside lane of the eastbound traffic lanes when the right front end of defendant's car hit the right rear corner of the truck, which then spun around and tipped over, so that it was facing northwest and lying on top of plaintiff's intestate. The truck was then partly off the highway in Ki's driveway, and partly in the outside lane nearest the edge of the pavement.

Defendant testified both under section 60 of the Civil Practice Act, as an adverse witness, and on his own behalf.

In his original testimony under section 60, defendant stated that he was driving east on the outside lane close to the south edge of the pavement, having crossed over to that lane after leaving the North Avenue and Main Street intersection, at which he did not have to stop as the lights changed. He claimed that he did not know how fast he was going at the time of the accident; however, in his subsequent testimony on his own behalf, defendant stated that he was going about 55 miles an hour at the time of the collision, and admitted that he had been traveling at about 65 miles an hour at the North Avenue and Main intersection.

Defendant also originally claimed, when testifying under section 60, that he did not see the truck until after the accident was fully accomplished and the truck was lying on its side; and then subsequently stated that he first saw the truck when he was 150 feet west of the point of impact, and that the truck was then in both westbound lanes, with the front end of it in the middle of the highway. Defendant also originally testified that he did not recall that any part of his own car was ever in the westbound lanes; and then subsequently testified that at the moment of impact his car was approximately two-thirds in the inside eastbound lane and approximately one-third over the center line in the westbound traffic lane. He also recalled that at the moment of the impact the truck was then in both eastbound lanes. He further testified that after the accident his car slid to a stop in the inner eastbound lane some 25 to 30 feet east of the truck, which was lying on its side, partially in the outside eastbound lane and partially in the driveway of Ki's restaurant, facing northwest.

On the basis of the foregoing evidence, along with plaintiff's testimony respecting the pecuniary losses sustained by decedent's dependents, and the land surveyor's identification of the exhibits of the area, the jury awarded plaintiff damages of $22,500. The judgment of the trial

court, entered thereon, was reversed by the Appellate Court, as hereinbefore noted, on the ground that plaintiff's intestate was guilty of contributory negligence as a matter of law, and this court has allowed plaintiff's petition for leave to appeal.

Where the Appellate Court reverses without remanding a judgment in favor of plaintiff in an action at law on such grounds, it is the duty of this court to determine, as a matter of law, whether or not there is any evidence, which, taken with its intendments most favorable to plaintiff, tends to establish that plaintiff's intestate did exercise due care. (*Ruspantini* v. *Steffek,* 414 Ill. 70, 72.) If there is such evidence, the issue of due care is a question of fact for the jury (*Shutan* v. *Bloomenthal,* 371 Ill. 244; *Thomas* v. *Buchanan,* 357 Ill. 270), and plaintiff's intestate may be deemed guilty of contributory negligence as a matter of law only when the evidence of due care is so insufficient that all reasonable minds in the exercise of fair and honest judgment would be compelled to reach the conclusion that there was a failure to exercise due care. (*Geraghty* v. *Burr Oak Lanes, Inc.,* 5 Ill.2d 153.) We are cognizant, moreover, that evidence of due care need not be established by direct and positive testimony, but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the collision. *Blumb* v. *Getz,* 366 Ill. 273; *Ruspantini* v. *Steffek,* 414 Ill. 70.

In the instant case the inquiry is whether plaintiff's intestate was in the exercise of due care as he drove his truck onto North Avenue from Richmond Street. His conduct is affected by the statute relating to stopping at preferential highways. (Ill. Rev. Stat. 1955, chap. 95½, par. 167.) The relevant portion of the statute provides: "(b) The driver of a vehicle shall stop as required by Section 86 of this Act at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway

or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed at such time as a safe interval occurs."

That provision has been construed as neither imposing an absolute liability upon the party approaching from the nonpreferential highway, nor conferring an absolute right of way regardless of all circumstances on the party traveling on the preferential highway. (*Anderson* v. *Middleton,* 350 Ill. App. 59; *Wallace* v. *Parnell,* 306 Ill. App. 310.) Thus, a person approaching a preferred highway is not required to stop, either at the stop sign or at the intersection line, long enough to permit *any* car that he observes on the highway to pass, regardless of its distance from the intersection. (*Little* v. *Gogotz,* 324 Ill. App. 516; *Leech* v. *Newell,* 323 Ill. App. 510.) The statute requires only that the motorist confronted by a stop sign may, exercising reasonable care, proceed across the intersection after he has stopped and yielded the right of way to such vehicles on the through highway as constitute an "immediate hazard." 164 A.L.R. 24, 25; *Little* v. *Gogotz,* 324 Ill. App. 516; *De Legge* v. *Karlsen,* 17 Ill. App. 2d 69.

The Illinois decisions, however, do not provide a precise formula for determining whether a particular vehicle has conformed to set standards; that question must be determined by the jury (*De Legge* v. *Karlsen,* 17 Ill. App. 2d 69; 164 A.L.R. 24, 25), and involves considerations as to relative speeds and distances of the vehicles from the intersection. *Middendorf* v. *Loiseau,* 335 Ill. App. 338; *Kirchoff* v. *Van Scoy,* 301 Ill. App. 366.

Applying these standards and considerations to the instant case, it is apparent that the best proof of which the case admits on the issue of due care is largely circumstantial. Viewing that evidence, including defendant's contradictory testimony, in the light most favorable to plaintiff, as we are bound to do, it appears that at the time of the impact the

truck must have almost completed the crossing, and must have been either between the two eastbound lanes, or even beyond that point and between the outside lane and Ki's driveway. If the truck had not proceeded that distance, defendant's car, traveling in the outside lane, according to his own admission, would have hit the center, rather than the rear portion of the truck, which is where it was struck. Moreover, since defendant stated originally that he did not see the truck until after the collision, there was no reason for him to react to the imminent danger and change lanes.

The position of the vehicles immediately after the impact afforded further evidence from which the jury could conclude that the collision occurred at an advanced stage of the truck's crossing of the intersection. According to the testimony of both Fitzner and defendant, the body of the truck extended beyond the pavement of the outside eastbound lane and into Ki's driveway, and defendant's car had skidded some 25 to 30 feet east of the truck.

The fact that the collision occurred at such an advanced stage of the truck's crossing is significant not only in establishing defendant's negligence in failing to see the truck and take precautions, as defendant was obliged to do once the truck had entered the highway (*Middendorf* v. *Loiseau,* 335 Ill. App. 338), but also bears upon the length of time the truck had been in the intersection. This, in turn, reflects upon whether defendant's car could or should reasonably have been regarded as an "immediate hazard" at the time the truck entered the intersection. That inquiry is also affected by the speed at which the vehicles were traveling.

It is uncontroverted that the truck was proceeding slowly, since it first had to traverse the westbound lanes, on which the traffic was heavy. However, the evidence respecting the speed of defendant's car is conflicting. As hereinbefore noted, defendant originally stated that he did not know how fast he was going at the time of the collision, and did not even see the truck until after the collision oc-

curred; and then subsequently testified that he was traveling at about 55 miles an hour at the time of the collision, and that he applied his brakes when he saw the truck about 150 feet from the point of impact. He also admitted that he had been going 65 miles an hour at the Main Street intersection, at which he did not have to stop, and that there was no traffic ahead of him. It would appear, therefore, that the jury would have been warranted in concluding that defendant was traveling faster than 55 miles an hour, not only from his conflicting testimony, but from the fact that he was unable to even swerve his car within the alleged 150 feet, from the fact that the force of the impact of defendant's car was so great it turned the slowly moving truck completely around, tipped it over, and knocked the rear portion completely off the highway, and from the fact that the momentum of defendant's car was still so great that it slid some 30 feet beyond the truck after the collision.

From this excessive speed and the fact that the truck had practically traversed the intersection at the slow pace, the jury could reasonably have concluded that when plaintiff's intestate originally started across the intersection some seconds earlier, defendant's car did not constitute an immediate hazard and plaintiff's intestate was entitled, under the statute, to proceed through the intersection. This conclusion is enhanced by the evidence casting doubt as to whether defendant's lights were on, and by defendant's admission that he gave no horn signal, which in turn is consistent with his original testimony that he did not even see the truck and could not have taken measures to avoid the danger.

Under these circumstances, it is evident that all reasonable minds would not agree that plaintiff was contributorily negligent in entering and traversing the intersection, and that the question was for the jury. It was therefore improper for the reviewing court to enter judgment notwithstanding the verdict. As stated in *Geraghty* v. *Burr Oak*

*Lanes, Inc.,* 5 Ill. 2d 153: "It is not the function of the reviewing court to substitute its judgment for that of the jury upon controverted questions of fact. It is fundamental law in our jurisprudence that all controverted questions of fact, in a jury trial, must be submitted to the jury for decision. This is primarily the exclusive function of the jury, and to withdraw such questions from its consideration is to usurp its functions."

We cannot agree with defendant and the Appellate Court that the cases of *Hering* v. *Hilton,* 12 Ill.2d 559, and *Tucker* v. *New York Chicago and St. Louis Railroad Co.,* 12 Ill.2d 532, establish that plaintiff's intestate herein was guilty of contributory negligence as a matter of law.

In the *Hering case* we did not hold that the conduct of the guilty party constituted negligence as a matter of law, as defendant urges us to do herein. We merely held that there were facts from which the jury could have inferred negligence and wilful and wanton conduct; hence, we refused to set aside their verdict. Moreover, the operative facts in that case were also distinguishable. The negligent party therein approached the preferred highway from a gravel road, in broad daylight, and, after noting the plaintiff's oncoming vehicle at an estimated distance of 1,300 feet, the defendant waited for a car from the opposite direction to pass, and then proceeded across the intersection without again looking in the direction of the oncoming vehicle or heeding the warning of its horn. In the instant case, the collision occurred after dark, the approaching vehicle gave no horn signal, there is doubt as to whether his lights were on, and there is no evidence that plaintiff's intestate knew or even should have known of the approach of defendant's car when he drove the truck into the intersection, in view of defendant's speed and the other facts and circumstances. Therefore, the *ratio decidendi* of the *Hering case* in no way supports defendant's position herein.

Nor is the *Tucker case*, dealing with the right of way at a railroad crossing, determinative of the duties and obligations of motorists crossing intersecting streets, involved herein. Nor do we find analogous *Dee* v. *City of Peru*, 343 Ill. 36, where plaintiff's intestate ran over a barrier at an open bridge, or *Illinois Central Railroad Co.* v. *Oswald*, 338 Ill. 270, where plaintiff admitted that she carelessly went into a place of danger.

We do find some elements of similarity in *Emond* v. *Wertheimer Cattle Co.*, 19 Ill. App. 2d 389, cited by plaintiff. Plaintiff therein, proceeding from the north on Naperville Road, approached the intersection with Route 34, a 4-lane highway which he intended to cross. After stopping, both at the stop-sign and at the north edge of the highway to permit westbound trucks to pass, and ascertaining that no traffic was approaching from the east, plaintiff proceeded into the intersection. As he drew near the center of the highway he saw defendant approaching from the west at a speed which he stated was about 70 to 90 miles an hour, and which defendant claimed was 40 to 45 miles an hour. When defendant attempted to apply his brakes, he skidded into the right rear portion of the truck, at a point south of the pavement of the highway. In refusing to find plaintiff therein guilty of negligence as a matter of law, the court reiterated that a judgment notwithstanding the verdict will not be granted if there is any evidence to support a verdict, and concluded that there was such evidence; that defendant could have seen plaintiff several hundred feet away; and that because of his speed and lack of control consistent with the physical facts, he was unable to stop, and struck plaintiff.

Although in the instant case plaintiff's intestate was killed in the collision, so there would be no testimony of his looking in both directions before entering the intersection, or, as to when, if ever, he saw defendant's car, there is evi-

dence, as in the *Emond case,* that the truck was proceeding slowly across the intersection and defendant's excessive speed could be inferred from the circumstantial evidence and defendant's own admissions. These circumstances, together with the fact that, as in the *Emond case,* the truck had practically traversed the intersection at the time of the impact, certainly afforded as cogent grounds for submitting the issue of due care to the jury as did the facts in that case.

It would serve no useful purpose to review the infinite factual variations of the other collision cases cited by plaintiff involving the right of way between vehicles traveling upon and entering preferred highways. The important consideration is that in these cases the court held that inasmuch as reasonable men would differ when viewing the evidence as to whether the vehicle traveling on the preferred highway would constitute a hazard to the party entering the highway, the issue of due care was properly submitted to the jury, rather than deemed negligence as a matter of law. *Barana* v. *Hannah, Inc.,* 12 Ill. App. 2d 364; *Little* v. *Gogotz,* 324 Ill. App. 516; *Wallace* v. *Parnell,* 306 Ill. App. 310; *Dinger* v. *Rudow,* 13 Ill. App. 2d 444; *Leahy* v. *Morris,* 289 Ill. App. 99.

Inasmuch as reasonable men would also differ, when viewing the evidence in the case at bar, as to whether plaintiff's intestate should have seen, or regarded defendant's car as an immediate hazard when he drove his truck into the intersection, it was error for the Appellate Court to set aside the jury verdict for plaintiff under the Wrongful Death Act, on the ground that her intestate was guilty of contributory negligence as a matter of law. The judgment of the Appellatae Court should, therefore, be reversed and the cause remanded, with directions to consider any other alleged errors in the record.

*Reversed and remanded, with directions.*

Mr. JUSTICE HERSHEY, dissenting.