Alice C. Mac Mullen, Administratrix of the Estate of Thomas F. Mac Mullen, Deceased, Plaintiff-Appellant, v. Leonard R. Danner, Defendant-Appellee.

Gen. No. 49,297.

First District, Second Division.

July 3, 1964.

Philip H. Corboy and Jerome H. Torshen, of Chicago, for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Alice C. Mac Mullen, as administratrix, sued to recover damages resulting from the wrongful death of her son Thomas F. Mac Mullen. His death occurred in an intersection collision allegedly caused by the negligence of defendant who drove his automobile onto a preferred highway without stopping at the point of intersection. Plaintiff appeals from a judgment on a verdict for defendant.

On March 26, 1958, shortly before 6:00 p.m., during daylight hours of a light, clear, sunny, dry day, decedent was driving his Volkswagen east on Illinois Route 19, commonly known as Irving Park Road. Defendant was driving his 1955 Ford south on Barrington Road. The cars collided in the southwest quadrant of the intersection. Mac Mullen was killed. Route 19 is a preferred highway. It is protected at this intersection by stop signs on Barrington Road. The stop sign on the northwest corner, which controls southbound traffic on Barrington Road, is 40 feet north of the north edge of Route 19. A billboard, approximately 20 feet long and 12 feet high from the base of the sign to the top of the signboard, stood in a field immediately to the west of the stop sign. The billboard stands on a slight diagonal, its nearest point to Route 19 being 47 feet therefrom, facing toward westbound traffic on Route 19 and northbound traffic on Barrington Road.

Route 19 in this area is a two-lane curved highway with a gradual slope. This route, as it approaches the intersection with Barrington Road, makes a flat curve of 2½°. The "curve" has a big radius which

150

does not curve very much. Route 19 comes to a $8\frac{9}{10}$ foot crest at a point 1,590 feet west of the intersection. From this point the grade of the highway is steadily though not uniformly downward. Route 19, at the time of the occurrence, had no speed limit. Defendant, who was familiar with the intersection, testified that as he approached the intersection, he brought his car to a stop two to four feet north of the stop sign protecting Route 19 or approximately 42 to 44 feet north of the north edge of Route 19. Defendant stated that he looked to his left and to his right. He saw a car to his left about a block and a half or two blocks away. He saw nothing to his right. He then began to move slowly in first gear from behind the stop sign toward the intersection. He did not stop again, but continued across the intersection. He did not again look to his right. While defendant was in the southwest quadrant of the intersection his car and that of Mac Mullen collided. At the time of the impact, defendant's car was moving at about 10 miles per hour. A police officer who arrived at the scene shortly after the event testified that defendant told him that when he realized a car was bearing down on him he accelerated in an attempt to clear the intersection. Defendant denied telling the officer that he had accelerated. Defendant testified that he did not see Mac Mullen's car at any time before the impact.

Defendant testified that from the point at which he stopped for the stop sign he could see about 300 feet west on Route 19. The sign cut off any further view of Route 19. Other witnesses testified that the view was unobstructed. Malcolm Logan, an eye witness to the collision testified that he stopped for the stop sign on the south side of Route 19, looked to the west and saw the Volkswagen 150 to 200 feet away coming east on Route 19 at 50 to 60 miles per hour.

151

He noticed defendant's Ford coming very slowly toward and across the highway. When Logan first saw the Ford it was between the stop sign and the intersection moving toward the highway at 5 to 10 miles per hour. It had not yet reached the intersection. It was in the process of picking up speed but was not doing so at any great rate and was traveling very slowly. Logan then sat back to see if there was going to be a collision or a near miss. He observed the impact. At the time of the impact the Volkswagen was traveling slower than it had been when he first observed it. The officer who arrived at the scene measured 59 feet of skid marks exclusive of shadow marks which had been made by the Volkswagen. The skid marks swerved to the left 3 to 4 feet before they reached the point of impact. All of the skid marks were prior to the point of impact. State Police Officer Joseph A. Wojcik testified that shadow marks are the marks of the tires when the brakes are first put on before the brakes start to hold. After impact the Ford made a 180° swing around and the rear end of the Ford smashed into the front end of Logan's car. The Volkswagen ended up in line with Logan's car When the cars came to rest, Logan jumped out of his car and ran over to look at Mac Mullen. He was lying on the ground partially under his own vehicle and was not moving. There was a stipulation that Mac Mullen died as the result of injuries received in the accident.

Plaintiff's witness, State Police Officer Wojcik, testified that the advertising sign is 90 feet north of the north edge of Irving Park Road. This witness testified that the sign did not obstruct the vision of Irving Park Road of one who had stopped back of the stop sign. He testified further that west of Barrington Road, Route 19 rises to a crest about 400 to 500 feet from the intersection and that the rise to the west of the intersection did not obstruct the vision of the

driver at the stop sign for a distance of 400 feet. Plaintiff's witness Fenger said that Irving Park Road approaching the intersection forms an "S." The highway starts an "S" turn and then reverses. There was evidence that driving east on Irving Park Road the Volkswagen driver had a clear view of the intersection for 400 feet or more. On the right side of Irving Park Road on the approach to the intersection was a sign warning motorists of the crossroad ahead. The Volkswagen had to pass this sign. No witness estimated the speed of the Volkswagen while going down hill. Logan estimated the speed of the Volkswagen when 150 to 200 feet west of Barrington Road at 50 to 60 miles per hour. The Volkswagen driver did not sound his horn. At the time of impact three-fourths of defendant's car had passed the south edge of Irving Park Road. The right front of the Volkswagen struck the right rear wheel and fender of the Ford. The collision knocked defendant's car which was going south completely around so that it was facing north. After the impact the front end of defendant's car was 2 feet beyond the south edge of Irving Park Road. Plaintiff's Exhibit 12, a photograph looking east from a point north and west of the intersection, clearly shows the stop sign. The advertising sign does not appear in this picture.

 Plaintiff argues that the court erred in denying her motion for judgment in her favor on the issue of liability and in not declining to order a retrial of the case for the sole purpose of determining damages. Plaintiff says that from the evidence no other inferences can be drawn but that defendant did not stop at the point nearest the intersecting preferential highway where he had a view of approaching traffic before entering the intersection and failed, both immediately prior to and while moving slowly across it, to keep any lookout whatever and thus violated minimal standards of care imposed by statutory and

common law. Plaintiff cites Ill Rev Stats 1963, c 95½, sec 183, which requires a driver to stop at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting highway before entering the intersection. Sec 167 of the same chapter, which especially pertains to vehicles entering through highways or stop intersections, requires drivers of such vehicles to stop as required by sec 183 of the statute and to yield the right of way to vehicles approaching so closely on the through highway as to constitute an immediate hazard. Under an analysis of testimony relating to the intersection and the speed of the automobiles involved plaintiff asserts that with Mac Mullen's car so close to the intersection the defendant could not avoid being negligent and that the negligence proximately resulted in Mac Mullen's death. Plaintiff insists that defendant's failure to stop at the intersection and his failure to keep a lookout violated the command of the statutes and was contrary to the duty of a motorist as defined by the courts in Hering v. Hilton, 12 Ill2d 559, 563, 147 NE2d 311; Ritter v. Nieman, 329 Ill App 163, 67 NE2d 417; Tuohey v. Yellow Cab Co., 33 Ill App2d 180, 185, 18 NE2d 691; Kneer v. Peoria-Rockford Bus Lines, Inc., 337 Ill App 2d 389, 86 NE2d 159 (Abstract) and other cases. Plaintiff says Mac Mullen did all that he could do; that his speed was not unreasonable; that he could not swerve to his left on the two-lane highway as a westbound car was coming toward him; that Mac Mullen tried to stop but that it was not possible for him to avoid the impact. Defendant urges that plaintiff failed to prove that Mac Mullen before and at the time of the occurrence was exercising ordinary care for his own safety; that he was driving at an excessive speed; that he failed to keep a proper lookout and that he did not have his car under control. The driver

154

of the Volkswagen had a good view of the scene as he approached the intersection. He passed a warning sign telling him of the crossroad. His car skidded 59 feet after a few feet of shadow marks. Three-fourths of defendant's car was beyond the south edge of Route 19 before the impact. The right front of the Volkswagen struck the right rear fender of the Ford. The Volkswagen knocked the Ford sedan so that it made a complete about face. There was evidence that the Volkswagen was going 50 to 60 miles per hour within 150 feet of the point of impact. The jury had a right to find that had he had his car under control he could have avoided the Ford. From a careful consideration of the evidence we conclude that this is the kind of case that should be passed upon by a jury. The trial judge did not err in refusing to direct a verdict in her favor or to enter a judgment in her favor notwithstanding the verdict.

■ ■ We turn to a consideration of plaintiff's contention that the trial court erred in failing to grant her a new trial on the basis that the verdict is against manifest weight of the evidence. We think that our remarks in disposing of the first point are applicable to plaintiff's second point. We think that the case was properly submitted to the jury and that the judgment is not against the manifest weight of the evidence. Finally defendant asserts that the court erred in instructing the jury in such a manner that it could speculate upon the disputed evidence. Plaintiff says that defendant's Instruction 20 fails to inform the jury that the defendant did not come to a stop nearest the intersecting roadway where an unobstructed view could be had and that furthermore the instruction permitted the jury to speculate that the defendant was driving with ordinary care. In view of the other instructions we do not feel that the jury was misled by defendant's Instruction 20. Plaintiff also

attacks defendant's Instruction 24 because it tends to confuse and mislead the jury by saying that a driver must decrease speed when approaching an intersection "when traveling upon any winding roadway." Plaintiff says that there is no evidence that there was a winding roadway. There was evidence of a winding roadway. The instruction could not have confused the jury. It did not tell the jury that Irving Park Road was a winding road. We do not think that the court committed reversible error in giving either of these instructions.

For these reasons the judgment is affirmed.

Judgment affirmed.

FRIEND and BRYANT, JJ., concur.