**Ruth Froman and Claude Froman, Plaintiffs-Appellants, v. Murril L. Day, Defendant-Appellee.**

**Gen. No. 10,889.**

Fourth District.

November 1, 1967.

James J. Massa, of Collinsville, for appellants.

Reed, Armstrong & Gorman, of Edwardsville (James L. Reed, of counsel), for appellee.

SMITH, J.

The plaintiff-wife filed her suit to recover damages for personal injuries sustained in an automobile accident, and her husband's suit is to recover damages to his automobile. The jury returned a verdict of not guilty, motion for new trial was denied, and an appropriate judgment was entered on the verdict. The plaintiffs appeal from this judgment order and assert that: (a) the trial court should have directed a verdict in their favor; (b) the verdict of the jury was against the manifest weight of the evidence; (c) the prejudicial conduct of defense counsel accounts for the verdict, and (d) the trial court erred in giving an instruction on speed.

■ Whether or not the trial court should have directed a verdict is not before us for the simple reason that such issue was never presented to the trial court.

Factual or legal issues not presented or considered by the trial court are "men without a country" when they appear only in a brief in this court. Pefferle v. Prairie Mills, Inc., 72 Ill App2d 440, 218 NE2d 247. ". . . Stated in another way, the action of the trial court in failing to do what it was never asked to do cannot be assigned as error. . . ." ILP, Appeal and Error, § 181, p 237. A directed verdict was not requested during the course of the trial nor in the post-trial motion. ". . . A party may not urge as error on review of the ruling of his post-trial motion any point, ground or relief not particularly specified in the motion. . . ." Ill Rev States 1965, c 110, § 68.1. The failure to direct a verdict is not before us for review.

Turning now to the occurrence events, Mrs. Froman testified that she was proceeding on S.B.I. Route 108 in a westerly direction toward Carrollton; she saw a truck approaching on a side road to her left; he was coming to a stop sign; she let up on the accelerator; as she came to the crossroads, he darted out in front of her and all she could see was his red truck, and she hit him. On cross-examination, she stated that the truck was on her left when she first saw it; she was about a block away and going about 45 or 50 mph; she didn't know how far the truck was from the intersection; her best estimate would be that he was twice as close to the intersection as she was when she first saw it; she did not know how fast the truck was going when he was a half-block to a block from the intersection; the truck was in her visibility the entire time; she didn't know whether the truck stopped at the stop sign and the highway before he came onto the highway; she just glanced at it; it was raining at the time of the accident and she did not have her headlights on, but did have the windshield wipers on. When she first saw the truck, she put her brakes on; she put her brakes on because she didn't know whether he was going to stop; the brakes took hold; she then let off the

brakes because she thought he was going to stop; she again put her brakes on before the collision occurred; she had them on at the time of impact; she didn't know how far she was from the point of impact when she put her brakes on before the collision; she was in her lane of traffic when they hit, and she swerved off onto the right shoulder after the impact. The defendant Day came over to her car and said, "I'm sorry it happened, I didn't see you coming. It was my fault."

A police officer testified that the Day vehicle was damaged on the right-rear side of the bed and windshield; very little damage was done to the cab from the car striking it; the major impact was on the bed of the truck to the rear near the right-rear wheel; the entire front end and windshield of the Froman vehicle was damaged, and it was a wet day and the road was slick.

Mr. Day testified that when he got to the hard road, he stopped, looked both ways at least twice, didn't see anything coming, put it in gear and started across the hard road. When he looked to the right it was raining right down. I would say you could see 300 or 400 feet—I don't think any farther. On a clear day you could see a quarter to a half-mile. The rain and fog line limited visibility on the day of the accident. The right-rear wheel of his truck was hit. His truck was knocked about 55 feet from the point of impact to where it came to rest. It was stopped at the end of the 55 feet when he hit a telephone pole with the bumper and bounced off hitting the fence. He did not tell Mrs. Froman that it was his fault. "I told her I was sorry, but I didn't tell her it was my fault."

Ill Rev Stats 1965, c 95½, § 167, provides that one approaching a preferential highway shall yield the highway to other vehicles "which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an

immediate hazard." The Illinois decisions do not provide a precise formula for determining whether a particular vehicle has complied with this statute. That question must be determined by the jury. It involves considerations as to relative speeds and distances of the vehicles from the intersection. Pennington v. McLean, 16 Ill2d 577, 158 NE2d 624; MacMullen v. Danner, 51 Ill App2d 148, 201 NE2d 173.

■ ■ Likewise the conduct of the plaintiff on the preferential highway is a question of fact for the jury. In Conner v. McGrew, 32 Ill App2d 214, 217, 177 NE2d 417, 418, it is said:

> ". . . The authorities agree that a driver on a preferential highway does not have an absolute or unqualified right of way that can be asserted regardless of circumstances, distances or speed. Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right of way, nor may he heedlessly proceed into obvious danger. Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered. (Citing cases.)"

■ Like the girls in the chorus line, the facts in intersection collisions vary in detail, but the fundamental essentials are the same. The facts in Pennington, MacMullen and Conner are strikingly similar to the case at bar. Day looked both ways twice, but did not see the plaintiff. Defendant's truck was in plaintiff's vision the entire time, but she didn't know whether it stopped at the intersection. The collision occurred in her lane of traffic and on the north side of the intersection. The defendant's

truck was struck at the rear wheel and along the bed. The defendant's truck caromed a distance of 55 feet, spun around, hit a telephone pole and bounced off into a fence. The defendant heard no horn. Under the three cases cited, these circumstances raised a question of fact for a jury determination as to whether plaintiff's vehicle on the preferential highway constituted an immediate hazard to the defendant. These circumstances raised questions of negligence and contributory negligence which are peculiarly within the province of a jury. We cannot say that their conclusions were erroneous or that their verdict was against the manifest weight of the evidence.

The plaintiffs further complain of the following instruction given by the defendant.

> "There was in force in the State of Illinois at the time of the occurrence in question a certain Statute which provided that:
>
> > " 'No person shall drive any vehicle upon any public highway of this State at a speed which:
> >
> > > " '(1)   Is greater than is reasonable and proper with regard to traffic conditions and the use of the highway or endangers the safety of any person or property, or;
> > >
> > > " '(2)   Is greater than the applicable maximum speed limit. The fact that the speed of a vehicle does not exceed the maximum applicable speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection or when special hazard exists with respect to other traffic or by reason of weather conditions; and speed shall be decreased as may be necessary to avoid colliding with any vehicle on or entering a highway in compliance

with legal requirements and the duty of all persons to use due care.'

"If you decide that a party violated the Statute on the occasion in question then you may consider that fact, together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before and at the time of the occurrence."

Since, as we have seen, the determination of the issues in this case involves consideration as to relative speeds, distances and visibility, the giving of this instruction was appropriate.

■ The plaintiffs further complain that the jury verdict was based on an innuendo deliberately injected into the case by the defense counsel that the plaintiff was engaged in an extramarital frolic with a hitchhiker passenger who was never identified and who did not appear and testify. Plaintiff herself testified that she took her husband to a train at Granite City on his way to Chicago about 10:00 a. m. She returned home and then departed to do some shopping for some paper plates, cups, tablecloth, and for a baby shower gift. She left home about 11:00 a. m. and proceeded to Wood River and Alton. Unable to get the baby shower gift, she inquired at one shopping place and was advised that there was a shopping center north of Alton. She then headed north and wound up at the intersection with 108. At the intersection, she saw a man standing there and asked him if he knew whether there was a town nearby and he said, "Yes, to the left." He asked for a ride and got in. He was in the car at the time of the accident. On cross-examination, plaintiff testified that she did not know what happened to the fellow who was with her; she didn't see him leave the scene; she didn't know his name; she had never obtained his name, and didn't know how he left the scene.

257

She further testified on cross-examination that she didn't know whether he was a young man, a middle-aged man, or an old man, and she didn't know whether or not he had a tie on. At the time of the accident, the plaintiff was some 50 miles away from her home, and the defense counsel conducted a rather detailed examination of the route that she followed, the time she consumed, a description of the hitchhiker and what happened to him. On cross-examination, she stated that she and her husband left home to catch the train about 10:00 or 10:30 a. m.; that she expected him back any time that day or night, and that it takes about 5 hours to get to Chicago. Defense counsel then asked, "Did you actually expect him home that night?" An objection to this question was sustained and the subject was dropped. The husband testified on cross-examination that he arrived home the following day and that he had made no effort to ascertain the name or the whereabouts of the hitchhiker. If either was known to anybody, it was never revealed in the trial. It is clear that the presence of this hitchhiker in the plaintiff's car had to be explained in some way to avoid any unfavorable inferences from the failure to call him as a witness. The probability or improbability of plaintiff's explanation arises from the facts to which she herself testified. What prompted him like the Arabs to fold his tent and silently steal away without giving his name or communicating with any of the parties under these circumstances is anybody's guess. Any innuendo was created by the facts in the case and not by any improper innuendo deliberately injected into the case by the defendant. The cross-examination was appropriate and proper. When the specific facts and the occurrence events are considered, it does not appear that the conduct of the hitchhiker or inferences arising therefrom affected the verdict. Whatever they were, they would still be

present on a second trial and a different result is not likely.

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.