George Emond, Appellee, v. Wertheimer Cattle Company, Inc., and John Praetz, Appellants.

Gen. No. 47,354.

First District, Third Division.
November 5, 1958.
Released for publication December 3, 1958.

Yates, Fisk & Haider, of Chicago (Tom L. Yates, of counsel) for appellants.

Peter Fitzpatrick, of Chicago (Albert E. Jenner, Jr., Prentice H. Marshall, of counsel) for George Emond as appellee and separate appellant.

Baker, McKenzie & Hightower, of Chicago (John C. McKenzie, of counsel) for Wertheimer Cattle Co., Inc., separate appellee.

JUSTICE BURKE delivered the opinion of the court.

George Emond sued Wertheimer Cattle Company, Inc., a corporation, hereinafter called the corporation, and John Praetz, hereinafter called the defendant, for injuries suffered as a result of an intersection automobile collision between plaintiff's truck and an automobile operated by the defendant. The theory of plaintiff's complaint was that the defendant negligently operated the car driven by him and that at the time of the occurrence he was the agent of the corporation

acting within the scope of his agency. At the close of plaintiff's case both defendants moved for directed verdicts. The court denied defendant's motion and sustained the corporation's similar motion, ruling that plaintiff had failed to prove prima facie that the defendant was the corporation's agent. The case proceeded as to the defendant and resulted in a verdict for $85,000, upon which judgment was entered. The court denied post-trial motions by the plaintiff and the defendant. The defendant prosecutes an appeal and the plaintiff prosecutes a separate appeal from the directed verdict and judgment in favor of the corporation.

On October 4, 1951, plaintiff was employed as a route driver by a laundry company. He was covering his regular route driving a panel laundry truck. His route included stops on Wheaton-Naperville Road north and south of Route 34. Just prior to the collision at about 1:30 P. M., he had stopped at the house of a customer who lived on the Wheaton-Naperville Road north of Route 34. He then proceeded south on that road toward the intersection with Route 34. He intended to cross Route 34 and continue south to the house of another customer on the Wheaton-Naperville Road. Route 34 (also known as Ogden Avenue) extends from east to west at the intersection with the Wheaton-Naperville Road. The traveled portion of Route 34 consists of two lanes of pavement for westbound traffic and two lanes of pavement for eastbound traffic. Route 34 is a preferential highway, being protected by stop signs on the north and south sides thereof at the intersection with the Wheaton-Naperville Road. Wheaton Road intersects from the north. The stop sign on the west side of Wheaton Road north of Route 34 is 96 feet north of the north edge of Route 34. Wheaton Road is paved and widens out considerably at the junction with the pavement on

Route 34. The gravel roadway extending south of Route 34 is known by several names, one of which is Naperville Road and is about 20 feet wide. It widens considerably at its intersection with Route 34. West of its intersection with the Wheaton-Naperville Road, Route 34 rises to the crest of a knoll which is 12 feet above the standard grade and approximately 6 feet above the grade at the intersection where the collision occurred.

The defendant was driving his Chevrolet sedan in an easterly direction along Route 34. David E. Jones of Aurora was a passenger in the car. Defendant says that he was driving at a speed of 40 to 45 miles an hour. Defendant's theory of the case is that he was traveling in an easterly direction along the arterial highway at approximately 45 miles per hour; that plaintiff failed to stop his vanette truck before attempting to cross the preferential highway and drove directly in front of defendant's approaching vehicle; that defendant's automobile collided with the right rear corner of plaintiff's truck in the most southerly eastbound lane near the south edge of the highway; that plaintiff's truck continued to the south, tipped over on its left side and stopped against a utility pole; and that if there was any negligence on the part of defendant, the plaintiff was guilty of contributory negligence barring any right of recovery.

Plaintiff's theory of the case is that he approached Route 34 from the north along the Wheaton-Naperville Road traveling 20 to 25 miles an hour. He intended to cross the highway and proceed south on the Wheaton-Naperville Road. He stopped at the stop sign 96 feet north of Route 34, then moved slowly forward and stopped again at the north edge of the highway. He looked to the east and saw westbound trucks which he permitted to pass and he continued to observe them until he had a clear view toward the

393

west. At that time he could see no traffic approaching from the west along Route 34. He then again looked east, observed that traffic approaching from that direction was a considerable distance away and started into the intersection. As he drew near the center of the highway he looked again to the west and saw defendant's automobile approaching at a speed of 70 to 90 miles an hour. It had previously been hidden from view by a hill and a curve which are approximately 300 feet west of the intersection of Route 34 and the Wheaton-Naperville Road. Plaintiff shifted into second gear and continued to cross the highway. Defendant attempted to brake his car when 50 feet from plaintiff. Because of the high rate of speed at which it was traveling, defendant's car skidded to the right and struck the rear of plaintiff's truck south of the pavement of Route 34 on the Wheaton-Naperville Road. As a result, plaintiff suffered the loss of his left arm, a broken jaw, two injured vertebrae and other severe injuries.

The defendant, arguing that the judgment is contrary to the law and evidence, calls attention to the appropriate statutes in effect at the time of the occurrence, particularly that all vehicles entering upon or crossing highway 34 shall come to a full stop as near the right-of-way of such highway as possible and regardless of direction shall give the right-of-way to vehicles upon such highway. (Sec. 167, Ch. 95½, Ill. Rev. Stat. 1951.) Section 183 of the same chapter provides that all vehicles shall stop in obedience to the stop sign. The defendant says it was the duty of the plaintiff to yield the right-of-way to the defendant; that the collision could not have occurred the way plaintiff described it; that the evidence shows that plaintiff failed to give the right-of-way to the defendant at the intersection; and that plaintiff drove into this protected intersection in front of defendant's ap-

proaching vehicle when he could not safely do so. Defendant states further that plaintiff's witnesses claim there was a 50 foot skid mark; that the undisputed testimony is that defendant applied his brakes for a substantial distance before the impact, thus slowing the Chevrolet car down so that it was almost stopped before the impact; that defendant had been traveling 40 to 45 miles an hour; and that although plaintiff was able to convince the jury that the collision occurred south of the south edge of Route 34, "it must be apparent that no man not blinded by passion and sympathy would believe it."

The second point advanced by the defendant is that plaintiff was guilty of contributory negligence as a matter of law, citing numerous cases. Defendant says that plaintiff wholly failed to prove by a preponderance of the evidence that he was exercising due care and caution for his own safety at and prior to the occurrence. Questions of negligence are for the jury and a judgment notwithstanding the verdict will not be granted if there is any evidence to support the verdict. In deciding this question the court will not weigh the evidence or consider conflicting evidence. Only the evidence most favorable to the verdict will be considered in the light most favorable to the verdict. Kahn v. James Burton Co., 5 Ill.2d 614; Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153; Seeds v. Chicago Transit Authority, 409 Ill. 566. The defendant and Jones, who was riding with him, testified that plaintiff failed to stop at or near the intersection; that he drove onto Route 34 when defendant's car was only 50 to 75 feet from the intersection; that defendant was driving at a speed of 40 to 45 miles an hour; that defendant tried to stop but was unable to avoid hitting plaintiff's truck because he drove right in front of defendant. Plaintiff testified that he stopped at the stop sign and again at the edge of Route 34; that he looked

both ways and permitted the oncoming traffic to clear the intersection; that when he started to cross the intersection defendant's car was not in sight; that when he had partially crossed the highway he observed defendant's car approaching at a speed of 70 to 90 miles an hour; that he then attempted to finish crossing the intersection; that defendant was driving so fast that he was unable to stop or control his, defendant's car; that defendant skidded and swerved and collided with plaintiff's truck south of the edge of Route 34 on the Naperville Road. We cannot agree with defendant that plaintiff's account of the collision presents a physical impossibility. There was competent evidence to support plaintiff's theory that defendant could have seen him several hundred feet away; that because of defendant's speed and lack of control he was unable to stop; that he skidded and swerved off the road to the right and struck plaintiff's truck; and that the proximate cause of the collision was the defendant's excessive speed and his failure to maintain proper control and lookout consistent with the physical facts.

██ From a careful reading of the testimony and exhibits and a consideration of the law applicable to the situation, we conclude that plaintiff made out a case and that the defendant should not have judgment notwithstanding the verdict. Our remarks with respect to the proof of plaintiff's action are applicable to the second point urged by the defendant, that plaintiff was guilty of contributory negligence as a matter of, law. A reading of the testimony convinces us that competent evidence sustains plaintiff's contentions that he was exercising reasonable care in the operation of the truck at all pertinent times. Defendant also argues that the verdict is against the manifest weight of the evidence and that the trial court erred in not allowing him a new trial. We find that the judgment is

supported by competent evidence and that the court was right in refusing to grant a new trial.

Defendant insists that the court committed reversible error in giving instruction No. 15, which reads:

"If you find from a preponderance of the evidence that George Emond stopped the truck he was driving as near the north right-of-way line of Route 34 as possible and that at the time he started to cross Route 34, vehicle traffic on Route 34 was at such a distance from the intersection that it would not, if driven at reasonable speed, have reached the intersection before George Emond, if driving with ordinary care would have safely crossed the intersection, then you are instructed that George Emond had the right-of-way."

Defendant argues that this peremptory instruction gave the right-of-way to a motorist entering a preferred highway protected by stop signs and completely disregarded the theory of the defendant, supported by the evidence. He says the instruction was erroneous for the reason that it overlooked the duty of the defendant not only to stop before entering the intersection but also not to proceed into the intersection until he could safely do so. Defendant states that the question of fact for the jury to decide was not whether the plaintiff thought he could safely cross before the defendant reached the intersection, but whether plaintiff did in fact stop his truck, whether or not he did look to ascertain whether he could proceed safely, and whether or not he remained stopped until he could proceed safely.

One of the points made against this instruction is that it failed to emphasize sufficiently the plaintiff's statutory duty as defined in Sec. 167, Ch. 95½, Ill. Rev. Stat. 1951. The criticized instruction was immediately followed by an instruction tendered by the defendant which recited the statutory language upon which he relied. Plaintiff's instruction No. 15 would

give him the right to proceed only if he stopped and perceived that any approaching vehicle was so far distant that he could safely cross before it reached the intersection. We do not feel that the jury would be misled by this instruction. The instructions read as a series presented a correct and fair statement of the law.

Defendant asserts that instruction No. 14, given at the request of plaintiff and which instructed the jury as to what they should consider in determining the plaintiff's case, constitutes reversible error, citing Signa v. Alluri, 351 Ill. App. 11. Defendant says that the instruction unduly and unnecessarily emphasizes the phrase "failed to exercise ordinary care" to do certain acts, and that this unduly highlighted plaintiff's allegations and charges. The instruction summarized the allegations of the complaint including the specific charges of negligence. A defense instruction summarized the defenses relied upon by the defendant as alleged in his answer. We are of the opinion that the instruction presented a fair summary of the allegations of the complaint and that it was within the letter and spirit of the Alluri opinion.

Finally, the defendant urges a reversal on charges of misconduct of counsel, and states that the conduct of plaintiff's counsel was intended to arouse the passion, prejudice and sympathy of the jury, and that obviously the verdict was affected by these improper elements. A reading of the record convinces us that the defendant had a fair trial and that he was not prejudiced by any improper actions or statements of plaintiff's counsel.

We turn to a consideration of plaintiff's cross-appeal against the corporation. It is plaintiff's theory that he proved prima facie that Praetz was the agent of the corporation, acting within the scope of his agency at the time of the occurrence, and that the

court erred in directing a verdict in favor of the corporation at the close of plaintiff's case. The theory of the corporation is that the uncontradicted and undisputed evidence shows that the defendant, Praetz, was not an agent or servant of the corporation, and that the evidence did not sustain any presumption of control over the defendant by the corporation. Since the early 1930's the defendant, Praetz, had been engaged in selling feeder cattle owned by the corporation to farmers in the northern Illinois area. At the time of the collision Praetz was enroute to Beecher, Illinois, to call upon farmers who were his regular customers. Because of his experience defendant was able to render valuable service to farmers through his skill in cattle judging and in assisting them to secure the most desirable cattle. His functions vary with each customer; sometimes he is commissioned by them to select their cattle to be purchased; sometimes he accompanies them on buying trips; at other times he acts as an intermediary, dickering or bargaining in the customer's behalf to secure the best cattle at the best possible price. His dealings were in no wise limited to any single customer or organization, although for a number of years he has brought his customers principally to the yards of the corporation. If a sale was concluded between the corporation and a customer brought there by defendant, the latter would then receive a commission based upon the weight of the cattle traded. The corporation fixed the price at which defendant sold the cattle. Until 1947 defendant was compensated on a straight commission basis computed at 25 cents per 100 pounds of cattle sold, which constituted his sole source of compensation from the corporation. In the 1940's his arrangement was changed in certain respects. Instead of a straight commission the corporation began paying him $75 a week, for which he was not accountable in any way, plus a commission of 15

cents per 100 pounds of cattle sold. Defendant has never been carried on the books of the corporation as an employee. The corporation has never at any time named his territory, his hours or the customers with whom he might deal. At no time has he established any prices or grades of cattle in behalf of the corporation. He was entirely free to deal with other yards and other cattle suppliers on his own account and on the account of his customers.

Until 1947 the defendant had been using his own automobile in the transaction of his business. In 1947 he traded in his car on a new model and the corporation paid the difference between the trade-in value and the purchase price. Sidney Linnerooth, secretary of the corporation, admitted that this was a company car. Title to the car was registered in the corporation's name. After that date the Illinois license plates for each year were purchased in the corporation's name. In 1950 this car was traded in on a second new automobile. Again the corporation paid the difference of $1100 between the trade-in value and the purchase price. Title to the car was registered in the corporation's name and the yearly automobile license plates were purchased in its name. It was this car that the defendant was driving at the time of the occurrence.

The corporation rents a hotel room in the Aurora Hotel at Aurora, Illinois. It paid all of the rental charges for this room. The defendant was invited by the corporation to use this room as his Aurora "headquarters." For many years he lived there without charge, about half the time, spending the balance of his time at his home in Dixon, Illinois. For the years 1950 and 1951, up to October 4, 1951, the date of the occurrence, the defendant derived all of his income from the corporation. During this period he did not sell any cattle for any cattle company other than the corporation. The corporation maintains a cattle yard

at Montgomery, Illinois. The home offices are located in St. Paul, Minnesota. Whenever the home office in St. Paul desired to reach the yard in Montgomery, but was unable to make direct contact with its local manager, the message was relayed through the Aurora Hotel. As often as once every three weeks the defendant was used as the intermediary of these messages.

On October 4, 1951, the defendant was driving the car, title to which was registered in the name of the corporation, east on Route 34 near Naperville. His destination was Beecher, Illinois, where he had an appointment with some farmers to try to sell them the corporation's feeders. At the intersection of Route 34 and the Wheaton-Naperville Road on this journey, the car being driven by the defendant came in contact with a truck driven by plaintiff. Mr. Sidney Linnerooth, secretary of the corporation, called as an adverse witness by the plaintiff, testified that the $1100 which the corporation paid in 1950 at the time the second car was purchased in its name, was an advance to defendant. He also testified that defendant had repaid that amount and admitted that there was no entry on the corporation's books to indicate any repayment. He said that sum was repaid by deductions from commissions, though not reflected in the books, and that defendant made the final payment consisting of $200 in April, 1951, by giving Linnerooth two $100 bills, but there was no record of the $200 payment on the books of the corporation. On examination by counsel for the corporation, Linnerooth testified that the corporation did not prescribe the hours during which the defendant should engage in cattle selling; did not suggest or specify the persons he should call on; did not specify or suggest the territory in which he should seek out business. He said that there was no agreement between the corporation and the defendant under which the corporation ever asserted or agreed or

401

undertook the right to control defendant's movements. He further testified that the corporation did not prepare a W–2 income tax return for defendant; never paid social security taxes or old age benefit taxes in respect to defendant. The defendant was also called by plaintiff as an adverse witness. On examination by counsel for the corporate defendant he testified that at no time did the corporation tell him where to go, who to see, when he should go to see customers, the territory in which he could seek customers, the route which he should take to see a customer, or the time at which he should be at any particular place. He also testified that he never advised the corporation when he was taking his vacation, when he would get back, or how long he was going to be gone. He stated further that he did not at any time agree that the corporation would have the right to direct or control him in the way he went about his business.

Plaintiff maintains that proof that the corporation owned the car which the defendant was driving was in and of itself prima facie evidence of agency, citing Parrino v. Landon, 8 Ill.2d 468; Howard v. Amerson, 236 Ill. App. 587; Robeson v. Greyhound Lines, Inc., 257 Ill. App. 278; and McCarty v. Yates & Co., Inc., 294 Ill. App. 474. The corporation states that any presumption that the defendant was its agent vanished by reason of the established facts, pointing out that in Illinois and other jurisdictions recognizing a presumption of agency based on ownership hold that this presumption vanishes where evidence to the contrary is introduced, and that if the evidence rebutting the presumption is without conflict and leads to the plain inference that the driver was not the owner's agent or, if he was, that he was not acting within the scope of his employment, the owner is entitled to a directed verdict, citing United Wholesale Grocery Co. v. Minge Floral Co., 25 Ala. App. 153; Pennsylvania

R. Co. v. Lord, 159 Md. 518; Hoffman v. Lasseff, 110 N. J. L. 122; and Kirrer v. Bromberg, 113 N. J. L. 98. The corporation insists that an analysis of the facts in the light of this test shows that the defendant was not an employee but rather an independent contractor and says that the defendant personally brought the parties together and was paid on a commission basis; that as a matter of record he frequently bargained regarding prices established by the corporation in direct opposition to it; that at no time did the defendant establish any prices or grades of cattle in behalf of the corporation; that he was not carried on the books of the corporation as an employee; that Social Security payments were not made upon brokerage commissions accruing to him; and that income tax was not withheld upon such brokerage commissions. The corporation further says that he was entirely free to deal with other yards and other cattle suppliers on his own account and on the account of his customers; that he took his customers to other yards when the corporation did not have the grade of cattle desired; that the corporation never told him what route to take going to or coming from a customer; that they never directed that he be at a yard or any place designated by it, never told him when he should interest himself in going to customers or at what time to do so; that he took trips and vacations without informing the corporation when he was going and how long he would be gone; that defendant testified that he did not at any time agree with Mr. Wolf or any other person that the corporation would have the right to direct or control him in any way he went about his business; and that he did not in any of his discussions with Mr. Linnerooth or any person agree or undertake that the corporation would have the right to direct or control his movement or the conduct of his business.

Upon the issue of agency presented by the ruling of the court on the motion for a directed verdict in favor of the corporation, the evidence must be viewed in the light most favorable to the plaintiff and all contradictory evidence must be disregarded. We are of the opinion that the evidence at the close of plaintiff's case was sufficient to submit to the jury the issue as to whether the defendant Praetz was the agent of the corporation at the time the car operated by him collided with plaintiff's truck. The car was registered in the corporation's name. The title was not transferred until two months after the occurrence. The 1951 Illinois license plates to the car were issued in the name of the corporation and it paid for the 1951 vehicle, which its secretary characterized as a "company car." This car was traded in on the car which defendant was driving at the time of the occurrence and the corporation paid the balance of $1100 in cash. Although Mr. Linnerooth testified that the defendant had repaid the $1100, he also testified that "there is no showing on the Montgomery books that any part of the money was ever paid." He also testified that the payment of the $1100 for the car appeared on the corporation's books but the books did not show a debt of the defendant to the corporation in that amount. He stated that the $1100 was deducted from defendant's commission checks but "the deductions from his checks did not appear in the detailed books for 1950 and 1951," that "no payment is shown directly in the books" of the corporation, that "there is no way to tell from an examination of our detailed books of account for the years 1950 and 1951 that there were any deductions made," and that "these deductions from the commissions payable to Mr. Praetz did not show on any books presently in existence." The evidence is unequivocal that during 1950 and 1951 the defendant sold only the corporation's cattle. Mr. Linnerooth tes-

tified that "the $75 a week is not an advance in the sense that it is owed to us by Mr. Praetz."

In deciding that the issue of agency should be passed upon by a jury, we also consider that there was proof of these circumstances: (1) The corporation paid defendant $75 per week, not as an advance, but absolutely. (2) For at least two years preceding the occurrence the defendant sold only the corporation's cattle. (3) The corporation provided the defendant with sleeping quarters in the Aurora Hotel without charge and provided him with free telephone service. (4) The corporation communicated business messages to its local manager in Montgomery through defendant. (5) The corporation furnished a "company car" for the "exclusive use" of defendant. (6) With the corporation's authority defendant signed the corporation name to the title papers and license application for the "company car." (7) At the time of the collision the defendant was driving this car on a trip to sell the corporation's cattle. (8) The corporation had the absolute right to terminate his relationship with defendant at any time.

From the testimony recited it is apparent that plaintiff does not rely upon a presumption which takes the place of proof. He adduced competent evidence from which the jury could decide that the corporation owned the car. While Linnerooth and defendant testified that the corporation did not attempt to control defendant's movements, it also appears that the corporation had the right to terminate the relationship at any time. Proof is uncontradicted that at the time of the occurrence the defendant was going to Beecher, Illinois, in furtherance of the corporation's interests.

For the reasons stated the judgment in favor of the plaintiff and against the defendant, John Praetz, is affirmed, and the judgment in favor of the Wertheimer Cattle Company, Inc., a corporation, against the

■■■

plaintiff is reversed and the cause is remanded with directions for a new trial on the issues between the plaintiff and the corporate defendant.

Judgment against defendant, John Praetz, affirmed and judgment in favor of Wertheimer Cattle Company, a corporation, reversed and cause remanded with directions.

FRIEND, P. J. and BRYANT, J., concur.