**Dominic Guidani, Plaintiff-Appellant, v. Dominic Cumerlato and Dominic Fassero, d/b/a Taylorville Bowl, Defendants-Appellees.**

Gen. No. 64–44.

Fifth District.

April 19, 1965.

Rehearing denied May 19, 1965.

John H. Ward and Tipsword and Fraley, of Taylor-ville (John H. Ward and Vance L. Fraley, of counsel), for appellant.

Emanual Rosenberg, Joseph L. Rosenberg, Wayne L. Bickes, and Rosenberg, Rosenberg & Bickes, of Decatur, for appellees.

MORAN, J.

Plaintiff, Dominic Guidani, appeals from a judgment notwithstanding the verdict entered in favor of the defendants by the Circuit Court of Christian County, in a suit for damages for personal injuries arising out of a fall by the plaintiff in a bowling alley owned and operated by the defendants, Dominic Cumerlato and Dominic Fassero. The case was tried before a jury and at the close of all the evidence, defendants moved

for a directed verdict, which motion was denied by the trial court. The jury returned a verdict for the plaintiff assessing his damages at $7,500. In granting defendants' post-trial motion for judgment notwithstanding the verdict, the trial court held that the allegations of the complaint were not sustained by the evidence.

Plaintiff's complaint alleged that he was a patron of defendants' bowling alley on the date in question; that while bowling he had occasion to use the men's rest room furnished by the defendants for their patrons; that upon returning from the men's rest room he made his approach to deliver his bowling ball onto the alley when his left foot stuck and he failed to slide on the alley approach, thus causing his motion to be stopped abruptly and causing him to twist and fall to the floor, thereby injuring him severely; that his failure to slide was caused by certain liquids which he got on his left shoe without his knowledge while he was using the aforesaid rest room; that defendants were negligent in permitting the aforesaid liquids to remain on the floor of said rest room for a period of approximately one hour, well knowing that such liquids might get onto the soles of a bowler's shoes and thus endanger his safety when he attempted to bowl.

The defendants had moved to dismiss plaintiff's complaint in the trial court on the grounds that it did not state a cause of action; that the complaint showed on its face that plaintiff was guilty of contributory negligence as a matter of law and that the complaint showed on its face that the alleged acts of negligence were not the proximate cause of plaintiff's injuries. The motion to dismiss the complaint was denied by the trial court and after the filing of an answer by the defendants, the case proceeded to trial resulting in a verdict for the plaintiff. The post-trial motion of defendants consisted of (1) a motion in arrest of judg-

17

ment to again test the legal sufficiency of the complaint and (2) an alternative motion for judgment notwithstanding the verdict on the ground that the evidence was insufficient to support the verdict. The trial judge denied the post-trial motion for arrest of judgment but granted the alternative post-trial motion for judgment notwithstanding the verdict on the ground that the allegations of plaintiff's complaint were not sustained by the evidence. He thereupon entered judgment in favor of the defendants and against the plaintiff.

■ When the trial court overruled that portion of defendants' post-trial motion asking for the arrest of the judgment in this case, it in effect ruled that plaintiff's complaint stated a cause of action. This was the same ruling that the trial court made before the filing of defendants' answer. In our opinion, the pretrial and post-trial rulings of the trial court holding that the complaint stated a cause of action were correct because the complaint contained all the material allegations necessary to fix liability on the defendants.

■ The next problem facing this court is whether the trial court was correct in granting defendants' alternative post-trial motion for judgment notwithstanding the verdict on the ground that the allegations of the complaint were not sustained by the evidence. If there is a complete absence of probative facts to support the conclusion drawn by the jury in this case, we must sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict. If, on the other hand, there is an evidentiary basis for the jury's verdict, we must reverse this case even though we might draw a contrary inference or feel that another conclusion may be more reasonable. In considering this case it must be remembered that the

18

jury is free to disregard or disbelieve whatever facts are inconsistent with its conclusion. In Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, 851, our Supreme Court said: "A motion for directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case."

██ To like effect, Hughes v. Bandy, 404 Ill 74, 87 NE2d 855, 858, wherein it was also stated: "No contradictory evidence, or other evidence of any kind or character, will justify a directed verdict or a judgment for the defendant notwithstanding the verdict, except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense." (Citing cases.)

██ It was said in McCormick v. Kopmann, 23 Ill App2d 189, 161 NE2d 720, 730, in passing upon a motion for a directed verdict: "Proof unfavorable to the plaintiff, even though the plaintiff herself introduced that proof, cannot be considered. The determination to be made is whether there is any evidence (all unfavorable evidence excluded) upon which the jury could base a verdict for the plaintiff under the count in question, and if there is, the motion as to that count must be denied and issues submitted to the jury." (Citing cases.)

██ There is considerable conflict in the evidence. However, this court like the trial court in considering the propriety of entering a judgment notwithstanding the verdict, does not weigh the evidence, consider its credibility nor test its preponderance. Whether or not

19

we differ with the jury's conclusion is of no moment so long as we are able to say that reasonable persons might differ in their conclusions.

Plaintiff, with his brother and two friends, went to defendants' bowling alley to bowl in open play at approximately 1:30 p. m., on the 12th day of February, 1961. They had bowled two complete games and three or four frames of a third game when plaintiff had occasion to visit the men's rest room. He did not notice anything unusual about the rest room at this time. Upon returning it was plaintiff's turn to bowl and he proceeded to do so. He then described the happening of his accident as follows: "Well, when I reached to the finish of my approach my left foot out forward so I wouldn't fall, kind of slid, but mine stuck at this time and threw me to the left and spun me around, jolted me and I grabbed hold of the ball return, I believe it was, and found out I hurt my back. I didn't know what was wrong. Ball went in the gutter. That was about it. . . . Well, it threw me to the left and stopped all like that and the weight of the ball carried my body, momentum threw me to the left and I went kind of left, I think I touched one knee. I don't know for sure, John. I don't remember, but my back was just, just pain all at once. I just kind of grabbed onto something."

He remained at that place until his ball returned but his back was hurting him so badly that he had to cease bowling. He sat on a chair directly behind the bowling approach to the alley, but the pain in the lower part of his back was such that he was becoming nauseated, so he then went back to a bench to lie down. He further described the happening: "Well, I tried to lay down. Excuse me. I tried to let myself down, lay down on it, and as I went down I kind of kicked off my

20

left shoe because the pain was down my left leg behind here and down by the calf and I didn't know if my ankle or anything was hurt. I kicked off my left shoe with my right and as I laid down I seen my shoe and I seen—I thought it was gum on the bottom of my shoe—and I went to get that, I think I might have put my head down, I got sick in the stomach and I grabbed the shoe and went to the rest room and as I went in the rest room I noticed—." He looked at the two urinals while he was on the way to the lavatory and noticed that there was water or a liquid substance between the two urinals. He then returned to where he had been bowling and waited for his brother and two friends to finish the game. The four of them left and went directly to the plaintiff's home. The plaintiff's wife immediately called their family doctor who told them to come to his office in Kincaid. His wife drove him to the office of his doctor who hospitalized him immediately.

Eva Guidani, plaintiff's wife, testified that she saw her husband's bowling shoes either when he returned that day at around 5:00 p. m. or after he was taken to the hospital at 8:00 p. m., and that the sole of the left shoe was damp at that time. Alfred Guidani, plaintiff's brother, testified that he had used the men's rest room forty-five minutes to one hour before bowling the last game at which time he noticed moisture on the floor in two locations. He testified that there was a pool of water about three inches in diameter near the wash basin and a pool, which was more or less a spattering, about six or seven inches from the two urinals and directly between them. Defendant Dominic Fassero testified on cross-examination that he had used the rest room two or three times on the date of the accident and did not notice whether the floor was wet or dry.

None of the other witnesses had direct knowledge whether or not there was moisture on the floor of the men's rest room on the date of the accident.

Gerald Melzer, whose duties consisted of pin setting, cleaning up and repairing bowling machines for the defendant, testified that he dry-mopped the floor of the toilet on the morning of the accident but did not move the matting in front of the two urinals or clean under the matting. He said that the whole toilet was cleaned every Friday morning and at that time the matting was taken out and hosed down. On other mornings of the week the cleaning consisted of merely dry-mopping the floor of the rest room everywhere but under the matting.

Dominic Fassero, a son of one of the defendants, testified that he was employed at defendants' bowling alley as a pinsetter and general maintenance man; that he was familiar with the matting in front of the two urinals on the day in question; that it was always a problem in any bowling establishment to erect or build anything to keep a bowler from getting any kind of deposit on his shoe, especially his left shoe because that was the shoe that had to slide. He said that he built up the steel matting so that it was an inch or two higher to keep the bowlers from standing in anything that might be spilled or "any foreign material got, you know, near the urinals." He also said that the matting was taken out, hosed down, and a disinfectant and deodorant used on it every Friday morning and that on all other mornings the floor of the rest room was dry-mopped without moving the matting.

The appellant contends that the trial court erred in granting the post-trial motion of defendants because there was sufficient evidence to sustain the plaintiff's complaint. On the other hand, defendants contend the trial court was correct in its ruling.

22

Defendants first contend that the alleged condition does not constitute a dangerous condition within the meaning of the law of negligence because the condition shown was too trivial to constitute a dangerous or substantial defect in the premises, saying: "While the law may require the owner of property to guard against dangerous conditions on their premises, such as would cause invitees to slip, trip and fall, the law does not require an owner, at his peril, to make sure and certain that no particles or moisture or dust come into contact with the bottoms of the feet of his invitees when such conditions are so trivial they could not constitute a trap or pitfall or dangerous condition which might cause a person's feet to go out from under them or the like." Defendants' own evidence seems to prove the opposite of this contention, for the son of one of the defendants, an employee of their establishment, testified: "Well, it is always a problem in any bowling establishment to erect or build anything to keep the bowler from getting any kind of a deposit on his shoe, especially his left shoe, for sliding conditions, so we had the steel matting that came from the old lanes uptown, so I got the idea to build this up to keep the bowlers from standing in anything that might be spilled or foreign matter got, you know, near the urinals."

Since the plaintiff was a business invitee, the defendants owed him the duty to use ordinary care to keep the premises reasonably safe for his use. (See Illinois Pattern Jury Instructions, No. 120.00, page 339 and cases cited therein. Donoho v. O'Connell's, Inc., 13 Ill2d 113, 148 NE2d 434.) Liability will be imposed on a proprietor of a business establishment where it appears that the proprietor or his servants knew of the presence of a foreign substance on the premises or that the substance was there a sufficient length of

23

time so that in the exercise of reasonable care its presence should have been discovered. (Donoho v. O'Connell's, Inc., supra; Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47.) See also Savaiano v. 12th Street Store, 330 Ill App 248, 70 NE2d 744, wherein the court held that it was a question for the jury to determine whether the presence of a slippery substance on a stairway for a period of ten or fifteen minutes was sufficient time for defendant to have discovered the defective condition. What constitutes ordinary care depends upon the circumstances which call for its use. (Sims v. Chicago Transit Authority, 4 Ill2d 60, 122 NE2d 221 at 224.) To put it another way, the greater the danger, the greater the care required to meet it. Certainly the duties of the defendants were proportioned to the perils inherent in the conduct of their business.

Since the exercise of due care depends upon the circumstances calling for its use, is the duty of the operator of a bowling alley any different from that of a retail store which caters to the casual visitor, clad in street clothes? In the case of Burns v. Goldammer, 38 Ill App2d 83, 186 NE2d 97, the court recognized that the danger encountered in a bowling alley is greater than that encountered in a normal retail establishment when it said at page 99:

> The jury might well have found that freshly expectorated gum would not so quickly become flattened or blackened, as plaintiff and her witnesses described it. Furthermore, we think that a jury might quite properly find that "ordinary care" of the approaches to a bowling alley demands more frequent inspection than do the common passageways of a retail store. Defendants' brief concedes that approach to the foul line of a bowling alley is terminated by a sliding motion.

As heretofore stated, defendants' night manager admitted that gum on the approaches was a frequent problem. In view of this, it might be expected that falls would occasionally occur, absent a policy of frequent inspection and clean up. It follows that the length of time such foreign matter must be present on the approaches of a bowling alley in order to charge the proprietor with constructive notice of its presence is shorter than in the case of foreign matter found on the common passageways of a retail store, which caters to the casual visitor clad in street shoes.

Of course the condition of the gum, the time required to charge the defendant with constructive notice, or the time such gum was present on the approach are not matters capable of precise determination. Nevertheless, in view of the circumstances of the case and the nature of defendants' business, plaintiff made a sufficient showing of constructive notice to take the case to the jury for its determination. We therefore conclude that defendants' motion for a directed verdict was properly denied.

An extensive annotation on the liability of a proprietor of a bowling alley for injury to its patrons appears at 92 ALR2d, pages 1074–1081. On page 1075 the author says:

It is apparent that the game of bowling involves certain inherent risks, since the player, carrying a ball weighing 12 to 16 pounds, must make a running and sliding approach to a foul line where he delivers the ball near the floor and must then stop abruptly. These necessities of the game have influenced both the duty of the proprietor to maintain the premises and the care to be exercised by the patron for his own safety. . . .

While the cases do not support any very specific rules as to the duty of the bowling alley operator, it is clear that he must ordinarily exercise reasonable care to keep the premises in reasonably safe condition for one engaged in the game of bowling.

■ Defendants also argue that plaintiff cannot recover because he did not fall at the place where he was supposed to have picked up the moisture on his shoe. They argue that the moisture on the floor did not cause the fall, saying that there are no cases cited in Illinois or any other jurisdiction holding that a condition can be sufficient to constitute an actionable defect in the premises which did not cause a direct fall or slip. That an accident will happen to a bowler with liquid on the soles of his bowling shoes is not only foreseeable but predictable. For this reason the defendants were charged with the duty of using reasonable care and caution in the operation of their bowling alley to prevent their patrons from getting liquid substances on the soles of their shoes. It seems that the men's rest room in a bowling alley is one of the most likely places for this to happen, so their duties would extend to proper care of the rest room. The jury might believe that falls might happen absent a policy of frequent inspection and cleanup; that dry mopping the rest room floor once a day, in the morning and then not under the steel matting, would not fulfill such a policy; that allowing liquid to accumulate under the steel matting for a week at a time would make it highly likely that liquids would accumulate around the edges of the matting and that said liquids might be picked up on the soles of the shoes of bowlers. If there was moisture on plaintiff's bowling shoe, it could have contributed to his accident. Therefore, the very thing that happened to plaintiff could have resulted from one of the principal dangers to be guarded against in the operation of a bowling alley.

26

In Thomas E. Elias v. New Laurel Radio Station, Inc., 245 Miss 170, 146 So2d 558, 92 ALR2d 1065, the Supreme Court of Mississippi held that the negligence of a bowling alley operator in leaving water and other liquids on the floor around the control booth in a bowling hall contributed to the injury of a professional bowler who was called to the control stand by the operator's employee and unwittingly steps in the wet substance which he forgets is there and falls as he is bowling, when the wet substance on his bowling shoe prevents him from sliding. In that case as in the present case, the lower court directed a verdict for the defendant. In overruling the lower court's holding, the Mississippi Supreme Court said at page 562:

> The jury had a right to pass on the question whether the appellee was negligent in creating an unsafe and dangerous condition around the control booth by not keeping it clean after having notice thereof or such time elapsing as a reasonable person would have obtained such notice. It is manifest that the defendant was negligent in leaving the water and other liquids on the floor around the control booth where plaintiff got the water on his bowling shoes. Elias was not a licensee or a gratuitous invitee. He was an invitee for compensation paid by him. The defendant was in the business of keeping a bowling alley and operating it and charging a substantial fee for those using bowling facilities. Hence it was appellee's duty to keep the premises in a reasonably safe condition for those using such facilities. (Citing cases.)
>
> It is therefore manifest that the appellee was under the duty to keep the premises in a reasonably safe condition for those using them. With such a large crowd in the bowling alley, the appellee must have been guilty of negligence in

27

maintaining the area around the control stand and in the concourse and in failing to keep the area clean. This negligence contributed to the appellant's injury since the substance on his shoes stemmed from the negligent failure of the appellee to keep the area in question clean and reasonably free from water and other debris.

Defendants also argue that the evidence in the record is not sufficient to furnish an evidentiary basis for the jury to find that plaintiff got water on his shoe while in the rest room; that the jury's finding that there was water on the floor of the rest room at the time plaintiff used it was not based on direct testimony but rather was based on the inference that because there was water on the floor both before and after plaintiff went into the rest room, then the water must have been there at the time. They say that to also assume that plaintiff stepped in water that was assumed to be there is basing an inference on an inference which is improper; that after the second inference is made, the court must make a third inference, which is that the water which was picked up on the sole of his shoe, caused his foot not to slide.

In Grand Trunk Western Railroad v. M. S. Kaplan, 43 Ill App2d 230, 193 NE2d 456, the court said at 462, 463:

Defendants urge that plaintiff's case must fail because it bases "an inference upon an inference."

They cite several decisions of our Supreme Court, together with a listing of twenty-one Appellate Court decisions, which have employed this formula in rejecting sequential inferences found to be untenable. Such a sweeping exclusionary formula is of doubtful analytical value in the decisional process. It serves only as a convenient repository

28

for rejected inferences. As stated in 1 Wigmore, Evidence, 41 (3d ed 1949, pp 435, 436):

> "There is no such orthodox rule (against basing an inference upon an inference); nor can be. If there were, hardly a single trial could be adequately prosecuted. . . . The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon." (Footnotes omitted.)

In Plodzien v. Segool, 314 Ill App 40, 43–45, 40 NE2d 783 (1942), the court relied on the quotation from Wigmore above set forth, in rejecting the theory that an inference cannot be based upon an inference. The court also quoted with approval the sensible position taken in Sturm v. Employers' Liability Assur. Corp., 212 Ill App 354, 363 (1918), where the court said that "an inference from an inference, and then a third and fourth may, under certain circumstances, be admissible (Ohio Bldg. Safety Vault Co. v. Industrial Board, 277 Ill 96, 115 NE 149 (14 NCCA 224)), but the more remote the inference the more enfeebled its probative force." We adopt the position taken in these authorities; the pertinent consideration is whether the inference based on an inference is reasonable.

This case and the principle cited therein, were quoted with approval in the recent case of Garrett v. S. N. Nelson Co., 49 Ill App2d 422, 200 NE2d 81.

The authorities cited by the defendants do not seem to fit the facts of the present case. Jones v. Kroger Grocery and Baking Co., 273 Ill App 183, involved a situation where plaintiff fell because of a piece of spinach on the floor of a grocery store. The court

pointed out that there was no showing that the defendant had actual or constructive knowledge of the presence of the spinach on the floor. In Wroblewski v. Hillman's, Inc., 43 Ill App2d 246, 193 NE2d 470 at 472 the court said:

> In the instant case there is no evidence in the record as to the length of time the vegetable leaf had been in place prior to plaintiff's fall; no evidence that anyone observed it on the floor for any length of time prior to the fall; no evidence as to its condition before or after plaintiff slipped on it. Accordingly, there is no evidence from which a jury might infer that the vegetable leaf had been in place for a sufficient length of time to charge defendant with constructive notice of its presence on the floor.

In Olinger v. Great Atlantic and Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443, the court pointed out there was no proof, actual or constructive, of the presence of a foreign substance on the floor. The court further said on page 445 of the Northeastern report:

> Where a business invitee is injured by slipping on a foreign substance on defendant's premises, and there is evidence tending to show that defendant or his servants knew or should have known of its presence, the issue of negligence will be submitted to the jury.

Nor do we believe that the other cases cited by the defendant are in point.

Since there was no direct testimony of the condition of the men's rest room floor at the time plaintiff is alleged to have gotten the liquid on his shoe, plaintiff must necessarily rely upon circumstantial evidence for proof of that fact. He seeks to do this by showing

since there was liquid on the rest room floor both before and after the first time he used the men's room, it must have been there at the time he used it. The court properly gave the standard IPI instruction, number 1.03, on circumstantial evidence which reads: "A fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved."

"Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." (Devine v. Delano, 272 Ill 166 at 179, 180, 111 NE 742.)

There was evidence that there was water on the floor near the urinals 45 minutes before plaintiff used the rest room. There was also evidence that there was moisture on the floor near the urinals shortly after plaintiff used the rest room. There was evidence that the plaintiff had bowled two games and several frames without any trouble; that upon delivering his first ball after using the rest room he was caused to stop abruptly; that moisture was seen on his left shoe after the incident. True it is that there are circumstances and evidence in this case which strongly mitigate against there being moisture on his shoe after the incident in question. However, in this situation, under the guide lines established by our courts, we are to consider only that evidence which, standing alone and with all of its intendments most favorable to the plaintiff, tends to prove the material elements of his case. Not only must we do this, but we must reject any unfavorable evidence even if it is offered by the plaintiff. This is the proper thing to do when we remember that the primary function of the jury in a law suit is to find

31

facts and apply those facts to the law as given to it by the court. (See Illinois Pattern Jury Instructions, page 6.)

In Lindroth v. Walgreen Company, supra, our Supreme Court had under consideration the decision of the Appellate Court which upheld the trial court's refusal to grant a judgment notwithstanding the verdict. In holding that there was a reasonable basis for the verdict of the jury, our Supreme Court said at page 853:

> In the instant case the evidence shows without dispute that the vaporizer was placed in operation according to directions and that forty-five minutes later it was melted and the room was afire. It is also undisputed that a properly constructed vaporizer could not have melted under those conditions. It seems that the jury could reasonably draw the conclusion that the vaporizer involved here was defective.

In the instant case plaintiff had no trouble with his bowling until just after he returned from the rest room. Immediately after returning from the rest room, he was caused to stop abruptly while using the approach to the alley, causing his ball to go into the gutter. It would seem that the jury could reasonably draw an inference that he must have picked up something on his shoe between the time he left the alley to go to the rest room and the time he returned. When we consider further that there was water on the floor of the rest room forty-five minutes before the incident in question and water there several minutes after the incident in question, the jury could infer that the water was there when the plaintiff used the rest room. They could also infer that he got the water on his

shoe in the rest room and that this prevented his shoe from sliding properly when he attempted to slide on the approach to the bowling alley thereafter.

In the Lindroth case, supra, our Supreme Court quoted the following cases with approval:

Colbert v. Holland Furnace Co., 333 Ill 78, 164 NE 162, which involved a cold air grating installed by the defendant and which gave way a year later causing the plaintiff to be injured. The cleat which held the grating was in evidence and appeared to be cross-grained and a break in it appeared, which break followed the cross grain. Our Supreme Court held that under these circumstances the jury could reasonably infer that the cold air grating was defective and that its defect caused the injury; Showalter v. Western P. R. Co., 16 Cal2d 460, 106 P2d 895, where the deceased was found fatally injured during the switching of certain cars in a railroad yard. The question was whether the injury was caused by the negligence of the defendant's employees in moving the cars. There was no eye witness but there was evidence that the defendant's employees jostled the cars at about the time and at the place where the injury occurred without first ascertaining the whereabouts of the deceased. The California court held that the jury could reasonably infer that such jostling of the cars knocked the deceased off the car on which he was riding and caused the injury; E. K. Wood Lumber Co. v. Anderson, 81 Fed2d 161, which involved a situation where a fisherman was found drowned, his boat destroyed, and on a fragment of the boat was a smear of red paint. It appeared that defendant's steamer was plying the waters in which deceased was drowned at the time and place in question and that it was the only such vessel in the vicinity. Its hull was painted red. There was no eye witness but

the court held a reasonable inference could be drawn that defendant's steamer collided with and destroyed the deceased's boat and caused his death; Lavender v. Kurn, 327 US 645, 66 S Ct 740, 90 L Ed 916, which involved a situation where a switch tender was found dead alongside defendant's railroad tracks. The evidence showed he had been struck on the head by some object which fractured his skull and caused his death. There was no eye witness. It was shown that during the time deceased was at the place of his injury, a train passed which was equipped with a mail hook which, if it was extended, could have struck the deceased and inflicted the injury. The question was raised as to whether the jury could reasonably infer from these facts that the hook struck and killed the deceased. It was not shown that the hook was in fact extended at the time and place of deceased's injury, and it did appear that, except for an elevation in one place in the ground along the track, the hook, even if extended, was too high to have struck the deceased standing on the ground. The court held that the case, on this evidence, was properly submitted to the jury, and that it could reasonably be inferred that the death was caused by the extended hook. It was there said:

> Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only where there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.

Tennant v. Peoria and Pekin Union Railway Company, 321 US 29, 64 S Ct 409, 88 L Ed 520 where the court, in holding the evidence was sufficient to submit the

34

case to the jury, said: "The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury."; Devine v. Delano, 272 Ill 166, 111 NE 742 and Town of Cicero v. Industrial Commission, 404 Ill 487, 89 NE2d 354, where our Supreme Court held the rule to be that reasonable inferences may be drawn from established facts and all that can be reasonably required to establish controverted facts, whether the evidence be direct or circumstantial, is that the evidence creates a greater or lesser probability leading, on the whole, to a satisfactory conclusion; Carter v. Yardley Co., 319 Mass 92, 64 NE2d 693, 164 ALR 559, wherein the plaintiff suffered burns after the use of perfume manufactured by the defendant. The particular ingredient in the perfume which caused the burns was not established. The plaintiff there introduced several witnesses who had suffered similar burns from the perfume and the court held that such evidence was properly submitted to the jury to show the probability that the burns were caused by some harmful ingredient in the perfume.

Stankowitz v. Goldblatt Bros. Inc., 43 Ill App2d 173, 193 NE2d 97, involved a suit for personal injuries sustained by a small child when she came into contact with exposed electric wires connected with a water cooler which defendant maintained for its store customers. The only testimony as to the condition of the plug immediately after the occurrence in question, was that the hard rubber which covered the plug was pulled back and bare wires were exposed. The court said at page 99: "We believe that the nature of the testimony permits a reasonable inference that the defective condition of the plug pre-existed plaintiff's contact with it."

The trial court properly instructed the jury that its duty was to determine the facts; that in determining those facts they were not to set aside

their everyday experience in life; that they were the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them and then properly gave the following issue defining instruction:

The plaintiff claims that he was injured and sustained damage while exercising ordinary care, and that the defendants were guilty of the following negligent acts and omissions:

a. Failed to maintain the premises in a safe condition for patrons in that they permitted water and human urine to remain on the rest room floor well knowing that such liquids on the soles of bowlers' bowling shoes would cause such shoes to stick and not slide in the usual and normal manner.

b. Permitted water and human urine to remain on the floors of the rest room facilities for a period of approximately one hour prior to the injury of the plaintiff.

c. That by the exercise of ordinary care and caution in maintaining said premises in a reasonably safe condition for the use of bowlers they could have and should have known of the presence of water, urine or other liquids on the floor of the rest room facilities.

The plaintiff further claims that the foregoing was the proximate cause of his injuries.

The defendants deny that they were guilty of negligence in doing any of the things claimed by plaintiff, and deny that the plaintiff was in the exercise of ordinary care.

The defendants further deny that plaintiff was injured or sustained damages.

36

In our opinion there was sufficient evidence in the record for the jury to find these issues in favor of the plaintiff. Plaintiff is not required to establish the fact of causation with absolute certainty. It is sufficient that he introduce evidence from which reasonable men may conclude that it is more probable that defendants' conduct was a cause than it was not. It is the function of the jury to weigh contradictory evidence and inferences and to draw ultimate conclusions from the facts. Utmost caution should be exercised to uphold the sanctity of trial by jury. King v. Ryman, 5 Ill App2d 484, 125 NE2d 840; Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635.

We conclude that the granting of the judgment notwithstanding the verdict by the trial court is erroneous and it is hereby reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

Judgment reversed and cause remanded for further proceedings.

EBERSPACHER, P. J. and GOLDENHERSH, J., concur.