**Martin N. Neurohr, Plaintiff-Appellant, v. Masten Richmond, Defendant-Appellee.**

**Gen. No. 65–91.**

Third District.

January 4, 1967.

Rehearing denied January 24, 1967.

Wolslegel & Armstrong, of Ottawa, for appellant.

Hupp & Irion, of Ottawa, for appellee.

ALLOY, J.

This is an appeal from a judgment of the Circuit Court of LaSalle County, following action of the trial court in granting to defendant Masten Richmond, a judgment notwithstanding the verdict. The jury had returned a verdict for the plaintiff Martin N. Neurohr in the sum of $27,500. The jury had also answered a special interrogatory submitted by defendant on the question of contributory negligence to the effect that plaintiff was not guilty of contributory negligence. The basis of the allowance of the motion for judgment notwithstanding the verdict by the trial court was that plaintiff was contributorily negligent as a matter of law. The trial court denied defendant's alternative motion for a new trial.

On appeal in this court, plaintiff urges that the question of contributory negligence was one of fact for the jury. The defendant contends that the trial court properly set aside the verdict of the jury and the answer of the jury to the special interrogatory, and also asserts that the court should have allowed defendant's motion for a new trial on the ground that the verdict of the jury and the answer of the jury to the special interrogatory were against the manifest weight of the evidence. Defendant prays alternatively that if the judgment is not affirmed that this court remand the case for a new trial.

The record discloses that on a clear, sunny day at 9:30 a. m. defendant was driving his 1958 Oldsmobile in a southerly direction on a gravel road in Rutland Township, LaSalle County, Illinois, approaching an intersection. East-west traffic at the intersection was controlled by stop signs. The intersection was described as a "bad one" because of a hill just to the south of the intersection. The north-south road was 22 feet wide and the east-west road was 15 feet wide. It was indicated that defendant had a clear view in the direction in which he was driving for three quarters of a mile as he approached the intersection where his automobile collided with plaintiff's eastbound truck. It was shown that defendant had driven over the road many times and was familiar with the hill which crested approximately 100 feet south of the intersection.

Defendant testified that although he was looking at the road he did not see plaintiff's truck prior to the time of impact. Defendant asserted that it was his opinion that the impact occurred at the center of the intersection. Damage to defendant's car was on the right front and on the right side. The truck was struck at the left front wheel and was turned upside down on the west side of the road to the south of the intersection. Plaintiff was thrown out of the truck and was lying in the ditch with a broken right leg. Defendant estimated his speed at approximately 45 miles per hour although he did not know his exact speed. Defendant stated he did not have time to apply his brakes and was only 10 to 15 feet from the truck when he first noticed it. There were no skid marks on the road north of the point of impact and apparently the impact occurred just to the east of the center line of the northbound lane of the north-south road and in the eastbound lane of the east-west road.

Plaintiff testified that he was driving east on the east-west gravel road approaching the intersection. Because of the hill to the south of the intersection, he

stated, it was difficult to see to the south at the intersection. He testified that he stopped a little past the stop sign and looked in both directions. He also testified that he observed defendant's southbound car about 300 feet down the road to the left (the north side of the road on which he was traveling) and "figured" that he had time to cross the intersection. He shifted gears and started to cross going five to ten miles an hour and keeping his eyes to the right due to the dangerous hill crest about 100 feet south of the intersection. At the time he looked to the left the defendant's car was between the first and second telephone poles on the east side of the road. There was some controversy as to how far this would have put defendant's car from the intersection (between 300 and 450 feet). Plaintiff apparently looked at defendant's car coming and after he had determined that he had time to cross ahead of such automobile he did not look again in the direction of the defendant's car but was watching the area to his right which he considered a more dangerous area from standpoint of traffic.

On a motion for judgment notwithstanding the verdict, the basic question raised is whether there is any evidence which taken in its aspects most favorable to the plaintiff, proved or tended to prove the cause of action (Moss v. Wagner, 27 Ill2d 551, 190 NE2d 305 (on remand 44 Ill App2d 180, 194 NE2d 481); Guidani v. Cumerlato, 59 Ill App2d 13, 207 NE2d 1). On the basis of the record before us, it is obvious that the jury could properly have concluded that defendant was negligent. The next basic question is whether the trial court properly concluded that the plaintiff was guilty of contributory negligence as a matter of law. The record in this cause showed that plaintiff stopped for the stop sign. It also showed that he looked and seeing defendant's car either 300 or 450 feet away concluded that he could safely cross the intersection. Plaintiff could reasonably have concluded that other automobiles not yet visible behind a hill that crested

about 100 feet south of the intersection (defendant's evidence indicated 258 feet) might have been closer to the intersection than was defendant's car. On appeal in this court, the appellee emphasizes that plaintiff did not again look to his left to see where defendant's automobile was and that this circumstance justified the conclusion of the court in granting the motion for judgment notwithstanding the verdict as a matter of law, on the theory that a "second look" was required.

It is the duty of a trial court to determine as a matter of law whether or not there is any evidence, which, taken with its intendments most favorable to plaintiff, tends to establish that plaintiff was in the exercise of due care (Pennington v. McLean, 16 Ill2d 577, 158 NE2d 624). If there is such evidence, the issue of due care is a question of fact for the jury. On the facts before us, whether the automobile driven by defendant was approaching the intersection so closely as to constitute an immediate hazard to plaintiff so that plaintiff should not have entered the intersection was a question of fact for the jury (Pennington v. McLean, supra; Emond v. Wertheimer Cattle Co., Inc., 19 Ill App2d 389, 153 NE2d 870). To assert that the plaintiff was guilty of contributory negligence as a matter of law for failure to look a second time is also inconsistent with precedents in this state (Quigley v. Crawford, 19 Ill App2d 454, 153 NE2d 867; Ritter v. Hatteberg, 14 Ill App2d 548, 145 NE2d 119; McDonald v. Stiner, 342 Ill App 651, 97 NE2d 573; Hamilton v. Family Record Plan, Inc., 71 Ill App2d 39, 217 NE2d 113). In Quigley v. Crawford, supra, the court determined that the question of contributory negligence was one for the jury when plaintiff looked in both directions when she was at a point 300 to 400 feet from the intersection and did not look again though if she had looked again she "could have seen the defendant's car." The precedents in this state have not arbitrarily concluded that a person about to enter the intersection

would be guilty of contributory negligence if he did not take a "second look" or "third look," but such cases have consistently concluded that whether or not such person is guilty of contributory negligence was for the jury to determine. The jury might have concluded, under the facts before us, that a second look or a third look was required of plaintiff and if such was the jury's conclusion the court would not disturb it.

There was some discussion as to location of the stop sign and the distances involved at the intersection, none of which, on the basis of the record before us, do we consider conclusive or justifying the entry of the order for judgment notwithstanding the verdict. As stated in De Legge v. Karlsen, 17 Ill App2d 69, at 79, 149 NE2d 491:

> ". . . Defendant here exercised his judgment and 'thought' there was sufficient time for him to cross the intersection. We cannot say that under the circumstances reasonable men would not differ as to whether his judgment was good or bad, therefore, it was for the jury to determine whether his judgment came up to the standard of the average man in the community.
>
> ". . .
>
> "The conception that a motorist on a road protected by stop signs has the right of way over motorists on intersecting subordinate streets does not mean that the latter, having stopped at the stop sign, must refrain from crossing the favored street whenever another vehicle is approaching thereon, no matter how far distant.
>
> ". . . the motorist confronted by a stop sign may, exercising reasonable care, proceed over the crossing after he has stopped and yielded the right-of-way to such vehicles on the through road as constituted an 'immediate hazard,' the question whether a par-

ticular vehicle constituted such a hazard in a particular case being one for the jury. . . ."

We must, therefore, conclude that under the record in this cause, the entry of the judgment notwithstanding the verdict was improper and should be reversed.

On the basis of the record, also, the jury was justified in determining that the negligence of the defendant was the proximate cause of the accident and plaintiff's injuries, and under such circumstances this determination was also a question of fact for the jury (Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74). We likewise conclude, on the basis of the record, that the general verdict of the jury and the special finding of the jury are not against the greater weight of the evidence. The trial judge was correct in denying such motion for new trial.

In viewing defendant's conduct, it is obvious that he traveled along a road he knew well on which he had a clear view at a speed not specified but around 45 miles per hour; that he did not slow down in spite of the hill which both parties considered dangerous and that he ran into plaintiff's six foot high blue pickup truck in the wrong lane of traffic or partially out of his lane without seeing the truck until it was 10 or 15 feet away.

On the basis of the record before us, therefore, the cause will be reversed with directions to the trial court to vacate the judgment notwithstanding the verdict and to enter judgment on the verdict in favor of plaintiff and as against defendant in the sum of $27,500 and costs.

Judgment reversed with directions.

STOUDER, J., concurs.

CORYN, J., dissenting:

I disagree with the majority opinion in this case, as I believe that the trial court was correct in granting the

defendant's motion for judgment notwithstanding the verdict. There was no significant conflict of evidence in this case, and all the evidence on the issue of liability came from the testimony of the plaintiff and defendant. The testimony of the plaintiff and defendant do not contradict one another. The only conflict in the evidence is in the opinion by the plaintiff of the distance from the intersection where the accident occurred to the hill to the south of this intersection, and the measurement of this distance by Deputy Sheriff William Dummett. Defendant testified that he was driving his automobile in a southerly direction on a preferred gravel road at an estimated speed of forty-five miles per hour. He says he had a fairly good view of the intersection, but did not see plaintiff's truck until he was ten to fifteen feet from said truck, at which time he took his foot off the accelerator, but did not have time to apply the brakes before the impact.

Plaintiff stated he was driving his half-ton pickup truck in an easterly direction along a gravel road, and was approaching the intersection of this road with a north-south gravel road, and that the traffic upon the road he was traveling was required by a sign to stop for traffic on the north-south road. It was a clear, sunny day. He stated that there is a hill seventy-five to one hundred feet south of this intersection, and that it is difficult for a driver approaching this intersection from the west, as he was, to see to the south because of an embankment on the south side of the east-west road. Neurohr stated that he came to a stop at the intersection, and looking to his left, observed the Richmond car about 300 feet to the north on the preferred gravel road. He said he figured he had time to cross the intersection. Therefore, he kept his eyes to the right because of the hill which was seventy-five to one hundred feet south of the intersection, and then shifted gears and proceeded into the intersection at a speed of approximately

five to ten miles per hour. The vehicles collided in the intersection. He said he merely glanced at the defendant's vehicle, as he was more worried about traffic that might be coming from his right. Neurohr testified that he never again looked back to his left after this glance, and that he was looking to his right when the accident occurred. Neurohr made no estimate of the speed of the defendant's vehicle. The hill to the south of this intersection was measured by Deputy Sheriff William Dummett to be 258 feet from the center of the intersection, rather than seventy-five to one hundred feet as stated by the plaintiff.

In an automobile negligence case, a plaintiff is required to prove that he was exercising due care for his own safety at the time of the occurrence, or, to phrase it another way, that the plaintiff was free from contributory negligence at the time of the occurrence. Contributory negligence is conduct for which the plaintiff is responsible amounting to a breach of the duty which the law imposes on persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which the defendant is responsible, contributes to the injury complained of as a proximate cause. The standard by which conduct for which the plaintiff is responsible is measured is the conduct of an ordinarily prudent person under the same or similar circumstances. Whether due care has been exercised, or whether the plaintiff has been guilty of contributory negligence, depends on the circumstances of each particular case. 28 ILP, §§ 121, 122, 123, Negligence.

I am of the opinion that under the evidence in this case the only logical conclusion that can be reached is that the plaintiff was guilty of contributory negligence as a matter of law. The plaintiff was an experienced driver familiar with the intersection at which the accident occurred. When he stopped at the stop sign and made a momentary glance to his left he discovered defendant's

vehicle approximately 300 feet from the intersection. The plaintiff made no estimate of the speed of the defendant's vehicle, and the only evidence in the record regarding this speed is the defendant's testimony that he was traveling approximately forty-five miles per hour. At a speed of forty-five miles per hour, a distance of 300 feet will be traveled in four and one-half seconds, as an automobile moves sixty-six feet each second at forty-five miles per hour. Having discovered this danger in the presence of defendant's vehicle, a reasonably prudent man, in my opinion, would wait until the known danger from his left had passed, and then keeping an eye to his right for cars coming over the crest of the hill to the south, would have proceeded safely into and through the intersection. That the defendant's vehicle constituted an immediate hazard within the meaning of the applicable statute (c 95½, Ill Rev Stats § 167(c)) would have been evident to the plaintiff had he taken a longer look or made additional looks to his left before entering the intersection.

In Ritter v. Nieman, 329 Ill App 163, 67 NE2d 417, at 171, the duty of a motorist obliged to stop at a stop sign was defined in the following language:

> "What is the purpose of a stop sign? Certainly, it does not signify that a motorist should stop, and then blindly proceed through a protected intersection without determining that he can do so with reasonable safety. The operator of a motor vehicle, when he stops at a preferred highway, should ascertain if he can proceed safely across such highway. If he cannot, he should not enter it. Merely stopping some place near a stop sign does not necessarily discharge one's duty. There is no virtue in stopping at a place where one cannot see. A stop sign is a challenge to a motorist to stop at a point where, by the use of one's faculties, one can definitely as-

certain if he can safely proceed into the protected thoroughfare."

In the Hering v. Hilton case, 12 Ill2d 559, 147 NE2d 311, the suit proceeded to trial on a single count of ordinary negligence. At the close of the plaintiff's evidence, the defendant was permitted to file an affirmative defense alleging that his work in maintaining the public roads for Bushnell Township, because of the doctrine of governmental immunity, relieved him from liability for ordinary negligence. Subsequently, the plaintiff filed an additional count to his complaint charging the defendant with wilful and wanton misconduct. The trial court denied the defendant's motion for a directed verdict on the wilful and wanton count, and the jury returned a verdict awarding the plaintiff damages in the amount of $7,000. The defendant appealed from the judgment entered on this verdict, and the Appellate Court reversed the case, holding that the defendant was not guilty of wilful and wanton conduct as a matter of law. The Illinois Supreme Court reversed the Appellate Court, and in so doing stated:

> "It is evident that the stop sign alerted defendant to the dangers of the intersecting highway, and imposed upon him a duty of waiting until he could traverse the preferred highway with safety. This the defendant failed to do. After his initial stop, he failed to keep a lookout, even though he knew that a vehicle was approaching from the west, and he entered the intersection without again looking in that direction to ascertain if it was safe to proceed, and without heeding a warning of plaintiff's car horn. Inasmuch as such conduct plainly involved an unreasonable risk with a high probability of danger, of which defendant should have had knowledge, the wilful and wanton count could have been properly submitted to the jury."

The underlying principle upon which I base my opinion that the trial court was correct in determining that the plaintiff was guilty of contributory negligence as a matter of law in the instant case is that "[O]ne cannot knowingly expose himself to danger and subsequently recover damages for an injury which, by the employment of reasonable precaution and circumspection, he might have entirely avoided." Carter v. Winter, 32 Ill2d 275, 204 NE2d 755, at 284.