**Mrs. Catherine Moran, Plaintiff-Appellant, v. St. Paul Federal Savings and Loan Association, Defendant-Appellee.**

Gen. No. 51,287.

First District, First Division.

May 15, 1967.

Drake Leoris, of Chicago (George E. Downs, of counsel), for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard, Reese Hubbard and Frederick W. Temple, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The plaintiff, Catherine Moran, brought this action to recover damages for personal injuries incurred when she slipped and fell on a stairway in a public building which was under the control of the defendant, St. Paul Federal Savings and Loan Association. At the conclusion of the defendant's evidence the court directed a verdict in favor of the defendant. Judgment was entered on the verdict and plaintiff appeals.

■ ■ On appeal we may not weigh the evidence as that duty belongs to the jury. The only function of this court is to ascertain, from the evidence most favorable to the plaintiff together with all inferences reasonably deductible therefrom, whether there was any evidence of negligence by defendant which warranted submission

of the issue to the jury. Mueller v. Elm Park Hotel Co., 398 Ill 60, 75 NE2d 314.

The evidence and inferences most favorable to the plaintiff show that on the evening of March 19, 1958, the plaintiff accompanied by her son, took her ill grandson to see a doctor in defendant's building. It was snowing at 5:00 p. m. when they entered the building and walked up the stairs to the doctor's office on the second floor. They were in the office about fifteen minutes and after having a prescription filled on the same floor they proceeded to the stairway. As plaintiff reached for the banister at the top of the stairs she slipped and fell as she was about to put her foot on the first stair and was injured.

Plaintiff testified that she went back to the doctor's office and after an examination and having the doctor's prescription filled at the pharmacy on the second floor they again proceeded to the stairway. She said she then looked at the stairway for the first time and when asked whether she saw anything that caused her to fall she said:

A. It looked to me like it was—to me it looked like there was milk spilled and it had dried, but it wasn't cleaned. And then the tracks from the snow was on it, too.

Q. You mentioned tracks. Where did the tracks lead from and go to, do you recall?

A. From the landing. From outside, the tracks in the snow. It had to start downstairs, from the entrance up.

Q. Do you recall whether or not they were tracked through the milky substance?

A. Yes, it was wet.

Q. And you described the milky substance as dirty? What do you mean by that?

A. Well, from the tracks it looked like it had been walked on.

William F. Moran testified that he is the son of the plaintiff and by occupation is a police detective. He testified that his mother was in front of him as they approached the stairway and that she was right at the top step when she reached for the banister and fell down the stairs. He said he noticed a "smudge" in the area where she slipped but "I didn't look at it too close." He said they then returned to the doctor's office and after an examination the doctor gave his mother a shot and a prescription which was filled in the second floor pharmacy before they left the building. They went down the same stairs when he observed that "the stairway was wet from the people walking up and down." He said he looked to see what she slipped on. He said he didn't touch it "but it was out from the wall on the landing about eight to fifteen inches, I'd say. It was about the size of a pie tin. It looked like it was kind of a—like vaseline or thick oil. And then tracks through this. It was dark like dirt rubbed into it. On top of that there was water."

Plaintiff contends that the jury should have been allowed to determine the question of the negligence of the defendant. In Olinger v. The Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 474, 173 NE2d 443, the Supreme Court stated the rule in an action for injuries sustained by slipping on a foreign substance to be as follows:

. . . if the substance was on the premises through acts of third persons or there is no showing how it got there, liability may be imposed if it appears that the proprietor or his servant knew of its pres-

481

ence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered.

In the instant case the plaintiff's son testified that while he didn't look too close he saw a "smudge" on the stair soon after the accident. It was after plaintiff was examined by the doctor and a prescription given her at the time was filled in a pharmacy on the second floor of the premises that plaintiff testified that upon returning to the same stairway she saw a substance that looked like dried spilled milk and tracks from snow were on it. Plaintiff's son testified that when they walked to the stairway for the second time he observed that the steps were pretty wet from people walking up and down. He describes a substance like vaseline or thick oil with tracks through it. "It was dark like dirt rubbed into it. On top of that there was water." It is clear that the witnesses for plaintiff disagree as to the foreign substance on the stairway.

■ ■ It is argued that "a jury could easily infer from the circumstances surrounding the accident, that is the tracks through the foreign substance as well as the dirty appearance of it, that the substance had been on the floor for a sufficient time under the circumstances so as to give the defendant notice." We do not agree. There is no evidence as to the length of time the different substances had been on the stairway prior to plaintiff's fall. It is clear that it was snowing and plaintiff and others had tracked in snow which could account for the wetness observed. The defendant is not an insurer of the safety of invitees to the premises. Olinger v. The Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443.

The facts in the case at bar are distinguishable from those in Burns v. Goldammer, 38 Ill App2d 83, 186 NE 2d 97. There a bowler's foot stuck on the alley while

making an initial "approach" and he was injured. The evidence showed that there was a piece of gum on the alley near the site which was flattened, dark and dirty except in one spot where plaintiff's foot had struck the gum. A piece of gum was found on plaintiff's shoe which matched the gum on the alley. The court held that in view of defendant's business and the circumstances of the case, plaintiff made a sufficient showing of constructive notice to take the case to the jury. In Guidani v. Cumerlato, 59 Ill App2d 13, 207 NE2d 1, the plaintiff returned from the rest room of an establishment and while attempting to bowl, fell and was injured because water had gotten on his shoe in the rest room without his knowledge. The evidence showed that forty-five minutes before and several minutes after the occurrence there was water on the floor of the rest room from which the jury could infer plaintiff's shoe was prevented from sliding properly. In each of these cases cited by plaintiff the involved substance which caused the fall was proved and there was ample evidence of notice to the defendant.

In Hartman v. Goldblatt Bros., Inc., 19 Ill App2d 563, 154 NE2d 872, a jury verdict in favor of plaintiff was reversed with directions to enter judgment for defendant. The facts showed that plaintiff came out of a revolving door entrance to the store and stepped on the concrete which was wet and slippery causing the fall and injury. There too, as in the instant case, it had been snowing and there was no evidence of any accumulated snow or any other debris. The court held that the wetness of the concrete was plainly visible to all persons and did not constitute negligence. This same situation appears in the case at bar.

In Wroblewski v. Hillman's, Inc., 43 Ill App2d 246, 193 NE2d 470, a directed verdict for defendant was upheld. There plaintiff's foot came in contact with a vegetable leaf and she fell. The court stated:

In the instant case there is no evidence in the record as to the length of time the vegetable leaf had been in place prior to plantiff's fall; no evidence that anyone observed it on the floor for any length of time prior to the fall; no evidence as to its condition before or after plaintiff slipped on it. Accordingly, there is no evidence from which a jury might infer That the vegetable leaf had been in place for a sufficient length of time to charge defendant with constructive notice of its presence on the floor. p 249.

 The record clearly shows that there was no evidence of any defect on the stairway or on the handrail. The stairs were apparently wet from snow tracked in by people using the stairs. The substance on the stair was not hidden from plaintiff's view nor was there any evidence of the length of time it had been on the stairway. There is nothing to show that the defendant failed to take any precaution which would have been practicable or reasonable nor is there any evidence sufficient to support an inference of negligence against the defendant. Under the circumstances the trial judge had no other alternative but to direct a verdict in favor of the defendant. Accordingly the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.